## Cooke's Guardian et al. v. Hazel.
(Decided March 5, 1937.)

JAMES R. HIGDON and W. E. AUD for appellants.

ALBERT B. OBERST and LEE GIBSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 28, 1916, Mrs. Nora Cooke, widow and devisee of her deceased husband, N. B. Cooke, conveyed to Needham H. Cooke, as trustee for his wife and children—born and to be born—a tract of land in Daviess county, Ky., containing 100 acres. The grantor stated in her deed that the property conveyed was devised to her by her deceased husband, and that after executing his will he requested her to make the conveyance after his death and that she did so in compliance with that request. The grantor repeatedly stated in the deed that it was made to the grantee "as trustee for his wife and his children." Immediately following the description of the land the deed says: "The purpose of this conveyance is to place this land in the possession of the said Needham H. Cooke for the use and benefit of his wife and children, any children he may have now or may hereafter be born to him—so that he, the said Needham H. Cooke, shall have complete and

588

absolute dominion over this property during his life and shall not be chargeable with any rents or for any of the proceeds thereof. * * * And he shall not have any estate in said land except the use and occupancy thereof during his life for the uses aforesaid.''

The land is most valuable for agricultural purposes, it being bottom land and very productive. After the conveyance, and some time in 1922 (the date not being shown), some kind of proceeding was had in the Daviess circuit court in which all of the cestuis, including the infant ones, were made parties; but by whom that action was brought the record does not disclose further than that the trustee was one of the parties plaintiff. The record brought here in this case, however, does show some of the pleadings in that cause as well as the judgments of the court rendered therein on June 3 and June 29, 1922. The last one is supplemental to the first one, and it is recited therein that the buildings and improvements on the farm were in need of repairs and that it was necessary for the trustee to borrow $1,200 for the purpose of making them. He was directed to do so and to execute a mortgage on the land to secure the amount. He thereafter executed two notes to G. A. Jett, one for $500 and the other for $700; but $728 of the proceeds—to secure which the mortgage was directed by the court to be made—was spent for other purposes than making necessary repairs to the farm as directed in the judgment of the court conferring authority for the trustee to borrow money for that purpose.

On November 22, 1927, after both notes were long past-due, Jett indorsed and transferred them to the plaintiff below and appellee here, W. S. Hazel, who later became the purchaser of the land, for three separate annual tax bills accruing after the rendition of the judgments supra. The tax bills with penalties and costs amounted to what plaintiff asserts was the aggregate sum of $517, which includes the amount of at least one tax sale made by the sheriff after the filing of this action. On November 30, 1927, Hazel filed this equity action in the Daviess circuit court against the trustee and all of the cestui que trusts, and in his petition he alleged that he had become the owner by assignment of the two notes executed to Jett. He also asserted his tax lien to the amount of the purchases he

had then made at the sheriff's tax sales, but his pleading was later amended so as to incorporate subsequent purchases at later similar sales. He asked for judgment for the amount of his aggregated indebtedness, and for an enforcement of his lien against the property in satisfaction thereof. The answers of defendants, including that of the guardian ad litem for the infants, contested plaintiff's right to the relief he sought upon the ground that the judgment authorizing the trustee to mortgage the property was erroneous and void; but if not so in toto, then the amount claimed to have been expended for other than repair purposes (and which as we have seen was $728) was and is void. They furthermore contended that the sales of the property for various annual accruing taxes were irregular and void for various reasons set out in their pleadings and motions.

The case pended upon the docket of the court from the time it was filed until May 12, 1932, when the court rendered judgment sustaining plaintiff's alleged lien for the amount of taxes he had paid and ordering the land sold in satisfaction thereof with a direction for the master commissioner to execute deed to the purchaser. Defendants objected to that order for various reasons—one of which was that the mortgage lien originally possessed by Jett (and which as we have seen was also contested) should first be determined and adjudicated so as to ascertain what amount if any was due thereunder and that no sale should be ordered until that was done. Another ground of objection was that on July 19, 1929, long after Jett came into the case by intervening petition, the trustee executed another mortgage on the same land to him for the sum of $2,040 which embraced a portion or all of the taxes claimed by Hazel, as well as the entire $1,200 originally advanced by Jett under the court's authorized mortgage. Certain powers and authority with reference to the use of the land was given him in the last mortgage, and also by another collateral contract. The latter mortgage was executed by the trustee and his adult children, but was not executed by any of the infant equity title holders, and if invalid as to them for any reason, it would not affect their joint undivided interest in the property.

The objections to the order of sale were overruled

with exceptions and the master commissioner executed it and made his report, which was, that at the sale plaintiff, Hazel, became the purchaser of the property for the amount of his alleged tax lien of $517, which was $3,983 less than the appraised value of the land made by two appraisers selected by the commissioner for that purpose, their appraisement being $4,500. Exceptions were filed to the confirmation of the sale upon the grounds hereinbefore stated, and upon the additional one that the accepted and reported bid of Hazel was grossly inadequate; but the exceptions were overruled and the sale confirmed. During the long sleep of the case on the docket of the trial court, many motions and pleadings were filed by the respective parties, but the final effect of all of them was to raise the two questions: (1) As to the validity of the two mortgages referred to, and (2) the validity of the alleged tax lien of the plaintiff Hazel—which questions we will proceed to consider and determine in so far as it is necessary to dispose of the appeal, but no farther.

■ The court in ordering the sale complained of expressly reserved for future determination all questions relating to the contractual mortgage lien, except to determine, as we have stated, that the amount of $728 of the proceeds of that mortgage was borrowed and spent contrary to the judgment of the court authorizing the loan and mortgage, and that it to that extent was invalid as a lien upon the involved property. Evidently the judgment authorizing the mortgage must have been brought under the provisions of section 491 of the Civil Code of Practice, but it is by no means clear that the remedy therein created applies to the facts of this case, since it provides for a mortgaging of the property—or a sale of it for certain purposes—only when there exists a life estate with remainder to others. It is extremely doubtful if the deed supra, from Mrs. Nora Cooke to Needham H. Cooke, creates in the latter any estate in the land other than to make him trustee for his wife and children, with possibly the right to manage, control, and perhaps occupy the premises while he was discharging his duties as trustee. But in view of the fact that the reservation of the court also postponed the determination of that question, we will make no adjudication of it.

However, we are sure that the second mortgage

referred to supra was unauthorized, since the authority conferred by the judgment directing the first mortgage was exhausted when the amount ordered to be borrowed was loaned and when the mortgage was executed to sesure it. Furthermore, if that second mortgage was valid it supplanted the first one, since the major part of it was the entire amount of the first mortgage, no part of which had been paid. Besides, Jett assumed certain obligations under the last mortgage and also in the collateral contract referred to, whereby he was given a limited possession of the property for the purpose of cultivating and managing it and paying the indebtedness due him, plus some of the tax claims asserted by Hazel. The legal effect of such transactions was not determined by the trial court and will not be done by us on this hearing. With these suggestions we will pass all items of dispute and contest embraced in question (1), supra.

■ We have concluded that the sales for the taxes, composing the tax lien asserted by the plaintiff Hazel, were made in substantial compliance with the law, and, since the trust estate is liable for taxes validly assessed against it, we think the objections made to the assessments, as well as the sales, should be and they are overruled. Furthermore, the then sheriff on April 9, 1930, prior to the rendition of the judgment appealed from, conveyed the property to Hazel pursuant to the tax sales made and reported by his predecessors in office, and under the provisions of section 4030 of our present statutes that deed is "prima facie evidence of the regularity of the sale and of all prior proceedings and title in the person to whom the deed has been executed." That statute was enacted in 1906, being chapter 22, art. 1, sec. 12, on page 88 of the Session Acts for that year. Since then, as will be seen in the notes to that section, we have consistently held that the burden was on the taxpayer, after the execution of the collector's deed, to prove any fact invalidating the tax sale. But it is argued that the sales in this case were invalid because the trustee was a life tenant in the premises and it was his duty to pay the taxes, and which is no doubt true if he was a life tenant; but the state and other taxing authorities are not required to lose their taxes because the life tenant, where one exists, has no property with which to pay and does not pay the taxes, nor shall they be

lost by the state government or any of its agencies authorized to levy and collect taxes because a trustee of the property taxed fails to discharge his duty to pay such governmental demands. Therefore, it is our conclusion that plaintiff has a lien upon the property for the just and proper amount of the taxes he has paid. But he possessed that lien before he became the purchaser at the decretal sale under the judgment appealed from, and it would seem that there was no necessity for the sale.

The sheriff's deed—which was executed before the decretal sale or the rendition of the judgment under which it was made—conferred upon plaintiff all the rights that a master commissioner's deed could confer, and which is only a lien upon the property in view of the fact that other liens were claimed to exist and attempted to be asserted against it. Therefore, the sale should not have been ordered until all questions appertaining to the additional liens were determined. The necessity as well as the propriety therefor is manifested by the facts of this case, since the purchaser at the judicial sale ordered by the court in the circumstances would be in utter darkness as to burdens assumed by him if his bid should be accepted, since he would not know whether the property purchased was or not encumbered with a prior lien superior to his rights obtained under the sale and if so to what extent—there having been no judgment determining such facts. In the circumstances the rights of the owners of the property, including the infant defendants, would be extremely jeopardized, but which would be removed if the existence and amount of such prior lien were previously determined.

In addition thereto, one of the exceptions was, as we have seen, inadequacy of price. The reported sale in this case was less than one-eighth of the appraised value of the land sold. It requires the citation of no case, nor any comment by us, to establish the availability of this ground. Not only did the property fail to bring two-thirds of its value, but the price was so grossly disproportionate to the appraised value as to at once call for the exercise of the court's authority to reject the bid on account of the inadequacy of price alone.

But it is insisted that appellants are precluded

from questioning the judgment ordering the sale because in the statement of appeal filed in this court—as required by section 739 of the Civil Code of Practice—only the order confirming the sale is named as being the judgment appealed from. That order overruled appellants' exceptions to the sale, the chief one of which was that the court erred in ordering the sale in the circumstances hereinbefore detailed, and which had the direct effect to call in question the propriety of the judgment ordering the sale.

The record in this case displays gross incompetency and mismanagement by the trustee of the property in his charge, to such an extent that it might be proper for the preservation of the property and to preserve it for the benefit of the cestuis que trust, for the trustee to be removed and another one appointed in his place, or that the property be put in the hands of a receiver to manage and control it until the valid debts—to be ascertained according to the principles herein contained —should be determined and settled. No such relief, however, was asked and, therefore, no such questions are presented for our determination.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set aside the one ordering the sale, and to sustain the exceptions filed thereto, and for other proceedings not inconsistent with this opinion.