# Allgood's Ex'r et al. v. Mercer.

April 25, 1941.

254

Cary, Miller & Kirk, R. M. Holland, O. L. Fowler and David C. Brodie for appellants.

Ridley M. Sandidge for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Catherine A. Allgood died in Daviess County in July, 1926. By the third clause of her will she devised a farm of 100 acres to Mary Lindsey Bell (now Mercer) for life with remainder to her children. By the fourth clause she devised a farm of 165 acres to be held in trust for the appellee, Wayne D. Heath, until he arrived at 31 years of age, to be his absolutely when he arrived at that age, but if he should die before then it was to go to Catherine A. Stone, wife of John Q. Stone, and the children of Mary Lindsey Bell, one-half to each of them. Wayne D. Heath was nine years of age at the time the will was written and at the time of the testator's death. The fifth clause of the will, which gives rise to the present controversy, was as follows:

"Fifth: I give, devise and bequeath my farm of 137 acres, known as the Cam Riley to my executor and trustee hereinafter named, for the use and benefit of Wayne D. Heath and the children of Mary Lindsey Bell, those now in being and any others that may be born to her. The income from said farm being divided equally among them and Wayne D. Heath. When the youngest child of Mary Lindsey Bell shall arrive at the age of 21 years, then this farm shall become the property of her children and Wayne D. Heath and they shall own it share and share alike in fee simple absolutely and forever."

By the eleventh clause of the will John Q. Stone was appointed executor and trustee of the will. He qualified in both capacities and also qualified as guardian of Mary, Helen Catherine, Betty Francis and Urey Lindsey Bell, the infant children of Mary Lindsey Bell.

In 1935 Stone, as executor and trustee under the will and as guardian of the four Bell children, filed action against his wards and their mother and against Wayne D. Heath in which a sale of the Cam Riley farm of 137 acres, devised by the fifth clause of the will, was sought. The Bell children at that time were infants under 14 years of age, and Wayne D. Heath was an infant over 14. In the petition it was alleged that the income from "the other farm" (meaning the one devised by the third clause of the will above mentioned) was not sufficient to support the Bell children; that their father had abandoned them and that they were in the custody of their mother, Mary Lindsey Bell, who was not able to support them; that neither the father nor mother of the children had sufficient property or income to support them and that it would be to the best interest of the children that the farm be sold for their support and education. The prayer of the petition was that the farm be sold and the proceeds divided according to the will and that the executor and trustee and guardian for the Bell children be authorized to use the proceeds for their support and maintenance or that the proceeds be reinvested as the court might direct. Proof was taken proving these allegations and proving also a condition of the farm which was probably sufficient to justify a sale for reinvestment under Subsection 5 of Section 489 of the Code.

Judgment was rendered adjudging that the farm should be sold and the proceeds invested in other property. Pursuant to this judgment the farm was sold in the year 1936 and the appellants, Forest McIntyre and his wife, Mildred McIntyre, became the purchasers for $5,015, a sum slightly less than the appraised value. The purchase price was paid and deed executed to the purchasers, who in turn conveyed the land to appellants, E. W. and W. N. Unsel. The Unsels executed an oil and gas lease to appellant, John B. Moore, who in turn assigned the lease to the appellant, Gulf Refining Company. After payment of the costs of the action approximately one-half of the proceeds of sale were paid to Stone, as trustee, and the other one-half to him as guardian of the Bell children.

In May, 1939, Mary Lindsey Bell, who had in the meantime married Mercer, and who then had another child, Claude Mercer, as guardian of her children made

a motion to set aside the judgment of sale. Notice of this motion was executed on all the above named appellants and on the appellant, John Q. Stone, executor and trustee under the will. It appears that Stone had resigned as guardian of the Bell children and been succeeded as such by their mother, Mary Lindsey Bell (Mercer). This motion also requested the court to set aside and hold for naught the order confirming the sale and the deed of conveyance to the McIntyres and the deed from them to the Unsels as well as the lease executed by them to Moore and by him assigned to the Gulf Refining Company. Numerous reasons were assigned in the motion, all but one of which we consider to have been insufficient to justify the court in setting aside the judgment. However, as we consider one ground assigned by the motion sufficient, no other will be discussed. The third ground assigned in the motion, which we consider sufficient, was that no power existed in the court to sell the farm for reinvestment except under Subsection 5 of Section 489 of the Civil Code and that the judgment was void because the bond required by Section 493 of the Code was not executed.

The Unsels, who were in possession of the land pursuant to a deed from the McIntyres, demurred to the motion. Upon a hearing the chancellor overruled the demurrer. No further pleadings were offered by the appellants. Judgment was thereupon entered setting aside the judgment of sale and all subsequent orders and proceedings. This judgment also set aside the McIntyre deed, the Unsel deed, the lease to Moore and assignment thereof to the Gulf Refining Company. Each of the appellants excepted to the judgment and prayed an appeal which is now before us.

It is apparent that the action brought for the sale of the farm began as one under Subsection 5 of Section 489 of the Code and it is further apparent that the judgment may not be sustained pursuant thereto since the bond provided by Section 493 of the Code was not executed before the judgment was rendered. It is conceded by appellants that the judgment may not be sustained under that Code provision but it is contended by them that, as it was adjudged that the farm should be sold for reinvestment, the judgment may be sustained under the Act of 1882 appearing in the Code following Section 491, no bond being required as to sales made

thereunder. That section of the Code, unnumbered, provides in part as follows:

"That when lands are held in trust by one person for the life of another, with remainder over to a class of persons, or to any person not ascertained or to be ascertained until the death of the person upon whose life such estate for life is made to depend, * * * it shall be competent for the circuit courts * * * in an action to which all persons having a present or vested interest in such land are parties, to direct the trustee to either sell or mortgage such land."

It is further provided in the act that the proceeds of sales shall be paid into court and reinvested by court order and that the proceeds of mortgages shall be applied under court order for the construction of permanent improvements on the land. The act also gives the court authority to require the *life tenant* to pay the taxes and insurance on the improvements and to pay the residue of rents into court until the mortgage debt is fully paid and the court is authorized to require semi-annual reports to be made by the *life tenant*.

It is the theory of appellants that the real purpose and meaning of the Act of 1882 is that land may be sold thereunder for reinvestment where it is held in trust for the duration of the life of some person although no life estate is created with remainder over to some other person or class of persons. They argue that the act was passed to prevent the tying up of property in trust with no power existing to obtain a sale when a sale might be expedient or necessary. It may be admitted that this was the purpose of the legislation, but it is axiomatic that unless land is held under the character of title covered by the act the provisions thereof may not be applied to justify a sale pursuant thereto.

It is the theory of the appellees that the Code provision is applicable only where a life estate is created in some person with remainder over to a class of persons or to a person not to be ascertained until the death of the life tenant and that it has no application where a straight trust is created with no remainder over.

It seems to us that the latter construction is the only correct one to be given to the Code provision since its language clearly implies, if it does not expressly

state, that it is applicable only to cases in which a life estate is created in some person with remainder over after the termination of the life estate. The above quoted language from the Code provision refers expressly to an "estate for life" and succeeding provisions of the section refer to the *life tenant*. For instance, it provides that the court may require the *life tenant to* pay taxes and pay the rents into court and further provides that reports may be required to the *life tenant*. The court is also empowered to appoint a receiver in the event the *life tenant* refuses to comply with the orders of court. We fail to see how any other construction can reasonably be placed on the act except that it applies only to land held in trust for the life of another where there is a life estate in the land with remainder over to a class or to a person to be ascertained at the death of the person upon whose life the life estate depends. This appears to be the construction placed on the act in Cooke's Gdn. v. Hazel, 267 Ky. 586, 102 S. W. (2d) 1006, 1008, although the facts there were not identically the same as those in the present case. The court there said that the act in question provides for the mortgaging or sale of the prpoerty "only when there exists a life estate with remainder to others." In short, it appears to us the act is open to no other construction but that there must be a remainder after a life estate and a life estate the enjoyment of which is in a person other than the class of persons who take as remaindermen.

It is argued by appellants that as there is a conclusive presumption that Mary Lindsey Bell (Mercer) may have children no matter how long she lives, the trust created by the will must necessarily exist for the period of her life and possibly for 21 years and 10 months thereafter and that therefore there is, within the meaning of the Code provision, a trust for or during the life of another. It may be admitted that this is true, nevertheless the title is not held in manner contemplated by the act, since no life estate, and, indeed, no other kind of estate, is created in Mary Lindsey Bell with remainder over thereafter. If this contention of appellants were adopted, the life tenants and the remaindermen would be the same persons, whereas it is clearly contemplated by the act that there shall be a life tenant with remainder over to some other person or class of persons.

While it is true that the trust must continue during the life of Mary Lindsey Bell (Mercer), and while it may be true that it may have to continue for 21 years and 10 months after her death, the character of the estate remains unchanged by her death and no estate is terminated and no new estate is commenced. The only effect of the death of Mrs. Mercer will be to change the term of the trust from an indeterminate to a definite number of years. Clearly the intention of the testatrix was not to create a life estate by the fifth clause of the will and clearly she did not do so. Had she intended to create a life estate she undoubtedly would have done so by using the same language she employed in paragraph three of the will above referred to by which she created a life estate in the other farm in Mary Lindsey Bell with remainder to her children. By clause five it was plainly her intention to devise a fee simple title subject to the trust which was to last for a term of years and end when the youngest child of Mary Lindsey Bell reached the age of 21.

Appellants rely strongly on Consolidated Realty Co. et al. v. Norton, Sr.'s Trustees et al., 214 Ky. 586, 283 S. W. 969, 970, in which certain property was devised in trust "until the death of all my descendants who are now in being, or who may be in being at my death, and until all of their children who survive them shall attain twenty-one years of age. * * * At the termination of said trust, the property is to vest in the same persons, and in the same proportions, as it would, if I were then to die intestate, and the present statute of descents were then in force." It was held that the title to the property was held in such manner as to bring it within the purview of the Act of 1882. The real question involved in that case was whether or not a sale might be had under the Act of 1882 where such sale was forbidden by the will and there was no discussion of the question now being considered by us as to the necessity of the existence of a life estate with remainder over. In that case, however, while the express term, "life estate," was not used, it appears that a life estate was actually created. The trust was to continue "until the death of all of my descendants who are now in being, or who may be in being at my death." During the lifetime of these immediate descendants they were the beneficiaries of the trust, but at their deaths a different class of per-

sons, namely, their children, became the beneficiaries until the youngest reached the age of 21, when the trust ceased. One class of beneficiary enjoyed the trust during the life of such beneficiary, at which time his interest ceased and the interest of his children began. In the present case however, no estate terminates with the life of Mrs. Mercer and no new estate begins.

It is further argued by appellants that the Act of 1882 is comprehensive enough to include a trust estate either for the life of the beneficiaries or for the life of another, and we are cited to Bullock v. Gudgell, 117 Ky. 288, 77 S. W. 1126, 25 Ky. Law Rep. 1413 as sustaining this position. We do not so construe that case. There the trust was created for and during the life of testator's son, the trustee to apply the net profits to the support of the son and his children, with remainder to the son's descendants living at the time of his death. There, clearly, a life estate was created in the son. It it true the life estate was also created in him jointly with the children nevertheless there was a life estate in him with remainder to a class to be ascertained at the date of his death such as clearly to bring the title within the terms of the Code provision. We are unable to escape the conclusion that the title created by clause five of the will was not the character of title contemplated by the Code provision under which the judgment is sought to be sustained. This being true, the court had no power to order a sale and the judgment was therefore void. Bullock v. Gudgell, supra; Soper et al. v. Foster et al., 244 Ky. 658, 51 S. W. (2d) 927.

Vigorous complaint is made by appellants as to the court's action in setting aside the judgment and all subsequent orders, as well as their deeds and leases, without requiring a return of the purchase money which apparently is still in the hands of the trustee and guardian of the infant defendants, and without taking into consideration improvemets made on the farm by the purchasers. We find, however, that this question was not presented to the court by appellants in any manner. Upon the overruling of the demurrer to the motion to set aside the judgment, appellants offered no further pleading and made no effort to have the court determine these questions. In these circumstances the only question before the court was whether the judgment and subsequent proceedings should be set aside and this was the

only question determined. On the return of the case the appellants may, of course, by appropriate pleadings assert any rights claimed by them and have the court to rule thereon.

Judgment affirmed.