# Kelly v. Marr et al.

Feb. 20, 1945.

Joseph H. Bullock for appellant.

Joseph J. Bradley, Edward C. O'Rear, Alvin E. Evans, Hunt, Bush & Lisle and Harry B. Miller for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

In the main the question presented is the power of a court of chancery to adjudge the sale of the interest of an infant in real estate under the provisions of Civil Code of Practice, sec 489, as amended by the Act of 1944, Acts 1944, Ch. 20, Code Supplement 1944, which Act partially amended Ch. 137, Acts 1942, relating to the same subject. We have had two cases approving such sales, one under the 1942, the other under the 1944 amendment. Presnell's Guardian v. Scantland, 297 Ky. 412, 180 S. W. 2d 281, and Ex Parte Craig, 298 Ky. 824, 184 S. W. 2d 232. Neither presents facts similar to those presented here, but in the latter we traced the history of sec. 489 of the Civil Code of Practice, and concluded, as argued here by appellee, that it was the intent and purpose of the General Assembly not only to remove confusion which had arisen under the old statutes, but to simplify the procedure and extend the jurisdiction of the court in such cases.

The facts here presented are: John B. Gorham died testate in July 1941. At the time of death he was owner of considerable real estate; among the holdings a farm on the Maysville-Paris pike about 8 miles north of Lexington containing 552 acres, the other about the same distance from Lexington on the Leestown pike containing about 144 acres. He devised both to the Security Trust Company as Trustee, one-half interest to be held for the benefit of John W. Marr, one-fourth interest each to William C. Wood and Elizabeth W. Mahoney, they being respectively nephews and niece of his deceased wife. Each devisee was to hold during life the net income from the real estate to be paid in the stated proportions. It was provided in the same clause (5) that neither the trustee nor "the above named beneficiaries" during their lives should have power to sell or encumber the

devised estate, or to anticipate the income therefrom. It was further provided that the interest devised to Marr should upon his death pass in fee simple, per stirpes, to his issue, if any surviving. Should there be no issue, then to pass to the other named devisees in equal portions, to be held in trust during their lives, then to their issue per stirpes, they to take in fee simple, with like provisions as to remainders in respect of the shares devised to Elizabeth Mahoney and William Wood.

On August 8, 1944, suit was instituted seeking a decree of sale of the devised lands. Plaintiffs were the life tenants in their own proper persons, Marr and Wood suing as statutory guardians of their respective children, all under twenty-one years of age. The Security Trust Company was defendant as qualified trustee. The basis stated for the sale was that the devised real estate (1) is not susceptible of division without impairing the value of the whole, or the several interests; (2) that the income from the property is and has been insufficient to keep up fixed charges against it; (3) the interests of the life tenants are consumed by necessary expenses of care and maintenance, and the interests of the remaindermen are rapidly depreciating because of insufficient income to maintain the properties in reasonable repair. In prayer they asked for sale and reinvestment of proceeds. The trustee answered by admission of the allegations of the pleading.

Proof was taken by depositions and transcript filed as is required by subsection (5) of sec. 489, Civil Code of Practice, Supp. 1944. The chancellor decreed a sale by the master commissioner at public outcry, the proceeds to be reinvested by the trustee under further orders of the court. The commissioner's report showed appellant had agreed to pay around $110,000 for the two tracts. In order to test title appellant filed several exceptions, two relating to unpaid taxes and a misdescription in one of the deeds, which are not mentioned in brief, hence waived. Martin v. Oliver, 295 Ky. 624, 175 S. W. 2d 127. Those which are brought forward in argument are: (1) A testator may prohibit the sale of his property for any period of time not beyond the limitation provided for in the statute against perpetuities. KRS 381.220. The will forbids the sale of the properties devised, during the life tenancy. (2) The suit should have been brought by the trustee. (3) The infants should have been made defendants. (4) The allegations of the

petition as to necessity of sale are not properly proven. In sale of infants' land facts must be alleged and proven showing that sale would be beneficial to remaindermen. Conceding, however, that under some circumstances a court of equity might order a sale of trust property where there is a prohibiting clause, it is necessary to show by satisfactory proof conditions of urgency or necessity arising after the execution of the trust which were not contemplated by the testator that would defeat the purpose of the trust. On the last point there are cited several cases from foreign jurisdiction, the opinions holding that the proof must show the necessity to sell. The power of the courts in this jurisdiction was higher, even prior to the Code amendments.

Going to the petition, we find that it meets the requirements of good pleading, and without elaboration pleads sufficient grounds. Two witnesses, one an experienced farmer, the other a successful business man experienced in valuation of real estate, well acquainted with properties in general, and with the involved property in particular, testified. It was shown that the property could not be divided without impairment; that the farm was in a run-down condition; the scant improvements were in bad repair, and there was doubt whether such as were needed could, under existing conditions, be supplied. It was also conceived that real estate prices were now at peak, with a prevailing opinion that later the economical situation might be such as to result in a slump. A reinvestment could result in the purchase of land better adapted to the maturing of the profitable crop, burley tobacco. It was shown that after paying fixed charges there is little or nothing for distribution.

Appellant argues that because the devised properties, or some portion, came to testator through a devise by a relative of the life tenants, he intended it to remain in the family. There is nothing contained in the will which tends to lend sacredness to the property. On the other hand, in case of death of the life tenants, the property passes to the issue in fee without limitation. In a reply brief it is insisted that the proof consisted only of opinions or conclusions, without proof of "necessity or urgency" arising since the execution of the will, hence the chancellor was in error in decreeing a sale. It might have been elaborated, but there is enough to show that a sale would be "proper, or beneficial to the parties

under disability," as so deemed by the chancellor, who was a resident of Fayette County, and no doubt knew the witnesses and the properties in question.

We shall take up the contentions that the suit should have been instituted by the trustee, and that the infants should have been aligned as defendants. This argument takes us back to the Code as it stood prior to the amendments mentioned and cases cited in support, Highfill v. Konnerman, 241 Ky. 282, 43 S. W. 2d 657; Noel v. Harper, 170 Ky. 657, 186 S. W. 503, and the recent case of Allgood's Ex'r v. Mercer, 286 Ky. 253, 150 S. W. 2d 635, all decided prior to the Code amendments. As we read the amendments there was no necessity for making the infants defendants, nor that they be represented by guardian ad litem. Section 489 of the Civil Code of Practice, as amended both by the 1942 and 1944 Acts, are explicit on the subject. The only exception arises when there is a private sale, subsections 7-8 of sec. 489, that is where the value of the interest involved is more than $1,000.

In the Craig case we went somewhat into history in relation to the law controlling sales of real estate held by persons under disability, to show what was apparently in the minds of the legislators in amending the older laws, first by the 1930, then the 1942 and 1944 amendments. We took up the 1944 law section by section and concluded that the amendments partially removed preexisting confusion, and simplified and liberalized the procedure. We found that much of the confusion arose concerning the actions, or rights to act, of temporary guardians or committees. The section relating to "parties" provides that a decree may be rendered on petition, cross-petition or counterclaim filed by the statutory guardian of an infant, or by a next friend, or by any party, against a guardian or committee, in any kind of similar proceeding maintainable against a person who is not under disability. Here, the suit was brought by the life tenants and the remaindermen were made plaintiffs by their respective statutory guardians. The wisdom of the provision is for the consideration of the legislature.

Subsection 8 (Acts of 1944) does not apply to the proceeding here. It relates to the power of the custodian to sell privately without previous judicial proceeding or judgment, upon such terms and conditions as he may deem advisable or for the best interest of his ward.

Subsection 7 of sec. 489 of the Civil Code of Practice, as amended, provides that subject to the provisions of the preceding section, judgment may be rendered and executed in the same manner and on the same terms as judgments in similar cases where no person under disability is a party.

We come now to the question of the power of a court of chancery to decree a sale of trust property, when the settlor specifically says there shall be no sale of the devised estate. In this case it was not prohibited during the lives of the remaindermen who might take in fee, but of the named life tenants, and the survivors of the class. It is clear from a reading of the entire will, it was just as much the intention of the testator that his niece and nephews, their survivor or suvivors, should have the enjoyment of income from the properties as it was that the remaindermen should take the fee. Gillespie v. Winston's Trustee, infra.

The argument of counsel for appellant on the point is that since the will prohibited a sale, as was testator's right under KS sec. 2360, KRS 381.220, it takes away from the court power or jurisdiction to adjudge a sale, as we take it, under any circumstances or conditions, except perhaps that of necessity. It does not appear necessary to enter into any discussion on the law relating to restraint on alienation or its effect on the question presented. It may be admitted for the purpose of discussion that a trust settlor has an inherent right to suspend or control the right of alienation, but the question is whether one has the right to control title to his property after his death, so as to deprive the court of power to sell under certain circumstances, or the power of the legislature to control the devolution. There is no doubt but that the law-making body has the power at any time to extend or provide a less period of limitation or otherwise modify the law. The determination of the question depends upon the power of the court as given by the legislature under the facts and circumstances of the particular case. The rule laid down in Restatement, Trusts, Vol. 2, 167, applies in our jurisdiction. After stating that where there has been a change of circumstances not known to or anticipated by the settlor and compliance would defeat or substantially impair the accomplishment of the purposes of the trust, it is said a court may direct the trustee to do acts unauthorized, or acts forbidden by the terms of the trust. This may

be done "even though it is provided by statute that every conveyance by the trustee shall be absolutely void. * * * Although a sale of certain property is forbidden by the terms of the trust, the court may direct a sale. * * * where its retention would result in a serious loss to the estate, though there may be other property which is sufficiently productive to effectuate the purposes of the trust, not merely on the ground that there might be an advantageous sale, but such sale may be proper where the sale promotes the interest of the beneficiaries. * * * Example: A conveys an apartment house to B in trust to pay the income to C, and on C's death to convey the house to D. By the terms of the trust B is directed not to sell the apartment house. Owing to a change in the character of the neighborhood it is impossible to find tenants. The court may permit B to sell the apartment house."

The principles stated have been applied in our jurisdiction when the facts and circumstances have warranted, notwithstanding the section of the statute above mentioned, and (prior) section 492, Civil Code of Practice, sales under sections 489—491, which provided no sale shall be ordered if forbidden by the trust document except that property held under such deed or will for more than twenty years after the execution of the deed or probation of the will may be sold for reinvestment of the proceeds where there shall have occurred such changes in the value or the condition of the property as to make such sale and reinvestment materially beneficial to the grantees or devisees. Section 489 eliminates the time element. Cases strikingly applicable, upholding sales under circumstances similar to those shown here, are Rousseau v. Page's Ex'r, 150 Ky. 812, 150 S. W. 983; Kean v. Tilford, 81 Ky. 600, 5 Ky. Law Rep. 655, which show that formerly sec. 492 of the Civil Code of Practice, when read in connection with the statute supra, did not have the hidebound effect attributed to it by appellant. Reference may be had to other cases which to some extent are relied upon by appellant. Sparrow v. Sparrow, 1916, 171 Ky. 101, 186 S. W. 904, dealing with the statute and Code sections involved; Gillespie v. Winston's Trustee, 170 Ky. 667, 186 S. W. 517, showing sales where circumstances warranted even though prohibited.

If we should undertake, as counsel have, to digest and distinguish these and other cases cited (for in-

stance, Highfill v. Konnerman, 241 Ky. 282, 43 S. W. 2d 657), or apply the opinions to the case at hand, it would require a volume. This we are not inclined to do for the reason that none of the cases cited in briefs, or supra, excepting the Craig and Scantland cases, was decided in the light of the recent Code amendments. This brings us to a consideration of the effect of these amendments on prior laws relative to sales of interests in real estate of persons disabled to contract. Counsel for appellee, in the face of strong opposition by appellant's counsel, contends that the Act of 1944 sets up an all-covering system, method and manner of the handling real estate thus owned; "a complete revision of the patchwork statutes," and the argument goes to the extent of insisting on an implied repeal of KRS 381.220. We do not have to decide this question, but are sure that sec. 492 of the Civil Code of Practice, as it stood prior to 1942, and which was the restrictive law, stands repealed.

We are not relegated to the question of repeal by implication. When we come to consider the intention of the legislature to which we must pay attention (Fidelity & Columbia Trust Co. v. Meek, 294 Ky. 122, 123, 171 S. W. 2d 41), we may look to acts, prevailing history, and what evil was to be cured. Chapter 20, Acts 1944, is titled as "An Act repealing and reenacting Section 489 Civil Code of Practice, being a part of Chapter 137, Acts of 1942," and intended to be comprehensive, since it closes: "No defect or error in the proceedings shall render the judgment or sale void unless the same is of the nature and character that would render the proceedings void if all parties were sui juris."

Keeping in mind the title, when we turn to the 1942 Act, we find it to be one "revising and establishing provisions for the sale of real property of infants and persons of unsound mind; and repealing and amending inconsistent provisions of the Code of Civil Practice and Kentucky Statutes." The Act then amends sec. 489, and its various subsections invest the chancellor with power to decree for any purpose necessary, proper or beneficial. The Act goes further and provides in sec. 489 the method, manner and machinery, embracing provisions as they now appear in sec. 489, Civil Code of Practice, Supp. 1944. Section 491 was amended as was sec. 497. The 1942 Act repealed paragraphs 2 and 3 of sec. 53, and secs. 489, 492, 493, paragraph 5 of secs. 494,

497, 498 and 574 Civil Code of Practice and secs. 2150 and 2150a, Ky. Stats., "and all other laws * * * in conflict with this act." The 1942 amendment of sec. 489 provided: "It is the intent of this section to provide exclusive procedures for the sale and conveyance of real property of persons under disability except where the same may be authorized by the terms of a will, deed or trust under which title is held."

This casual digest of the two acts shows that it was the intent and purpose to broaden and extend not only the power and jurisdiction of courts of chancery in the sale of real estate of persons disabled, but to extend the power and authority of fiduciaries and trustees in proceedings for such purpose and to simplify the procedure. The Act of 1944 by repealing and reenacting sec. 489 of the Civil Code of Practice, which is a part of Chapter 137, Acts 1942, did not put back into effect those provisions which were repealed by the 1942 Act, but left in effect secs. 491 and 497, as amended by the 1942 Act. To elaborate would require much writing, but it is clear from a reading of both Acts the legislature exercised its efforts in doing away with many of the former restrictions thrown around such sales. On the whole case we are of the opinion that the chancellor correctly decreed the sale.

Judgment affirmed.

The whole court sitting.