## Johnson v. Frankfort & Cincinnati R. R. et al.

November 8, 1946.

257

McKnight & Shuff for appellant.

Smith & Leary and Fowler & Fowler for appellees.

Opinion of the Court by Judge Thomas—Affirming.

The appellee, Frankfort & Cincinnati Railroad, operates a steam railway between Frankfort, Kentucky, and Paris, Kentucky. On December 20, 1944, Med Campbell was one of its employees as a member of a section crew, the foreman being Jonas Hedges. On that day the crew in a railroad motor car was on its way to work, and at a grade crossing in Scott County there was a collision between the railroad car and a truck traveling on state highway No. 25 resulting in the death of Campbell. He left a will and it appointed appellant, H. J. Johnson, executor of his estate.

The highway truck which collided with the railroad car was owned and operated by R. L. Parker. Appellant as such executor filed this action in the Scott circuit court on February 5, 1945, against the railroad company and Parker jointly, seeking to recover damages in the sum of $15,150 for the alleged negligence of both defendants in bringing about the collision resulting in decedent's death. Parker though summoned did not answer or take any steps in defense of the action against him, although

258

he is designated as an appellee on this appeal but no judgment was rendered either for or against him. Therefore, the case so far as he is concerned, is not before us, and this opinion will not affect any rights of appellant as against him. The railroad company answered denying, in general terms, the material allegations of the petition, except it stated that its business as a carrier was only between the two points of its termini, both of which were entirely within the Commonwealth of Kentucky.

In a second paragraph it alleged that on June 6, 1931, it—as such intrastate carrier only—made application to the compensation board of Kentucky to be permitted to operate its railroad under our compensation act as is provided in subsection (2) of KRS 342.005 which is the second section of the act, and that the application so made was duly signed and executed by it and all of its then employees, copies of which were filed with the answer; that thereafter it renewed its bonds from time to time as authorized by the statute and which, as well as the application, were accepted by the Board; that thereafter, up to and including the day of decedent's death, it placed conspicuously in its offices and places of business, notices that it was operating under our Workman's Compensation Act; that after so accepting the provisions of the compensation act in 1931 all incoming or newly employed servants signed its register with which it provided itself upon acquiring its eligibility to accept the benefits of the act, and that on September 25, 1944, shortly after the decedent was employed he signed its provided registration book accepting the provisions of our compensation act.

The pleading in describing the method pursued by which defendant and decedent each brought themselves within the provisions of the act, states in more detail than we have done every act performed by both appellee and its employee, Med Campbell, showing that what was done was in complete compliance with the provisions of the section of the statute supra. The first part of its first subsection makes the act applicable "to all employers having three or more employes regularly engaged in the same occupation or business." That language is followed by this exception: "That it shall not apply to

domestic employment, agriculture, steam railways, or such common carriers other than steam railways for which a rule of liability is providet by the laws of the United States, etc.''

It will thus be seen that appellee being a steam railway was not covered by the act in the first excerpt we have taken therefrom. But the second subsection of the same section says: ''Any employers and employes who are by the provisions of this section excepted from the provisions of this chapter, including employers having less than three employes, may subject themselves thereto by joint, voluntary application to the board, in writing, for such period as may be stated in the application, which shall be irrevocable during such period and effective thereafter until a written revocation be filed with the board or the employment be terminated, and any employers and their employes may, with respect to the disease of silicosis caused by the inhalation of silica dust, in like manner voluntarily subject themselves thereto as to such disease.''

Plaintiff demurred to the second paragraph of appellee's answer which the court overruled, and upon plaintiff declining to plead further the action as to appellee was dismissed, from which plaintiff prosecutes this appeal.

The only argument by appellant's counsel in this court for a reversal of the judgment is the interpretation which they place on subsection (2) of section 342.005 inserted above. That construction is, that—notwithstanding appellee properly obtained its right to operate under the compensation act as well as did its then employed servants at the time it made application therefor, and each were permitted to do so by the compensation board—appellee's right acquired at that time does not apply to *subsequently* employed servants, unless the entire formula for obtaining the benefits of the act by the employer and employee is repeated by both employer and subsequent employed servant, and if not so done then the benefits of the act are limited as to both employer and employee to those who sign the original application; whilst counsel for appellee contend that when the employer once brings himself under the act by complying with the formula provided therein for that purpose, he

remains so until he properly withdraws himself therefrom, provision for which is contained in later sections of the act, but which was never done in this case according to the averments in the second paragraph of appellee's answer. Such contentions present the only question involved in the case.

A cardinal rule for the interpretation of statutes—if there is any doubt from the language employed as to the intent and purpose of the Legislature in enacting it—is that courts should avoid adopting a construction which would be unreasonable and absurd in preference to one that is "reasonable, rational, sensible and intelligent" as is stated in the text of 50 A. J. in treating of Statutes, page 385, sec. 377. That rule, as we have said, is universally applicable to the involved statute in this case, even if we should consider that the language of subsection (2) of section 342.005 KRS, was ambiguous which we do not conclude in the light of the object and purpose as appear from the provisions of the entire act.

The question as to the proper interpretation of statutes has been before this court in a great number of cases. Perhaps the latest one is that of Swift v. Southeastern Greyhound Lines, 294 Ky. 137, 171 S. W. 2d 49, 50. The court in that case construed section 271.320 KRS, relating to the right of corporations to sell its property. The statute giving such right uses the word "all" in saying that they "shall have power to sell and convey *all* of its property, etc." (Our emphasis). The action was brought by a stockholder to prevent the appellee in that case from selling a part of its property located in Birmingham, Alabama, the objecting stockholder contending that the statute did not permit a sale of the corporate property, unless it was *all* of the property that it owned. We held that such interpretation was absurd, and substituted for the word "all" the word "any." In doing so we quoted with approval and adopted this excerpt from Crawford on Statutory Construction, pages 288, 289 and 290, the text saying: "as a result, the court should strive to avoid a construction which will tend to make the statute unjust, oppressive, unreasonable, absurd, mischievous, or contrary to public interest. That construction should be accepted which

will make the statute effective and productive of the most good, as it is presumed that these results were intended by the legislature. In order to carry out the legislative intent, it is therefore apparent that the statute should be given a rational, logical, and sensible interpretation. * * *''

In addition to the inserted excerpt supra from Crawford on Statutory Construction, the opinion in the Swift case also said: ''It is never to be presumed that the legislature intended to enact an absurd statute. * * *. No one could insist seriously that the wording in the Statute in question, as it now stands, would constitute other than an absurdity.''

It is also a general rule—too familiar to require the citation of authorities—that the intent of the Legislature, as gathered from all parts of the statute, should be the one to be administered. The latest case from this court so holding is Oates v. Simpson, 295 Ky. 433, 174 S. W. 2d 505. The intent of the Legislature, as we have seen, is not to be construed so as to be absurd, unreasonable, confusing and difficult of application. Under that rule it cannot be presumed that the Legislature intended by the enactment of subsection (2) of KRS 342.005 to require an initially excepted employer from accepting the provisions of, and thereafter operate under, our compensation act by pursuing the formula by which it may operate under the act, to continually repeat that formula upon the occasion of the employment of each subsequent employee. After the employer became so baptized, according to the statute, into the group having a right to operate under the act, the legislature manifestly did not intend that he or it would fall from grace and should be re-baptized upon the employment of each subsequent employee. Clearly, it never intended, as we interpret the act, any such construction as is contended for by counsel for appellant. Counsel admit that they can find no case exactly in point, which, perhaps, is due to the fact that if any other state has enacted similarly worded statute no one has seen proper to make the contention here relied on by appellant's counsel.

We feel constrained to approve the interpretation contended for by appellee's counsel to the effect that when an initially excepted employer from the benefits

of the act later accepts its benefits by complying with a prescribed formula in the act, he or it remains under the act until he either declines to further operate under it and so manifests that purpose to the Board in compliance with other provisions of the statutes. We can see a reason for the provision that in the initial *acceptance* of the act by one who is excepted therefrom should accompany his application with the consent of those *then* employed by him, before obtaining the right to operate under the act. Such employees, not theretofore operating under the act, might bring themselves thereunder by jointly applying to the board for such right, since theretofore at the time of their employment their employer, being excepted from the act, was not required to keep a register for his or its employees to sign. Employees thereafter employed would sign the register kept by the employer the same as is required of those employees initially beneficiaries under the act.

Appellant nowhere contends that appellee was engaged in any manner in interstate commerce, but was exclusively an intrastate carrier, or that it in any manner was engaged in interstate commerce so as to be regulated by any federal statute as to its liability for injury to or death of an employee. If appellee were engaged to any extent in interstate commerce the burden was on appellant to allege and prove that fact. Horovitz on Compensation, pages 46-55; Johnson, Admr. v. Southern Pacific Co., 199 Cal. 126, 248 P. 501, 49 A. L. R. 1323; Kepner v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co., 332 Mo. 299, 15 S. W. 2d 825, 65 A. L. R. 599. See also Notes to U. S. C. A. Title 45, "Railroads," beginning on page 344 of the volume dealing with such carriers.

Since both parties to the employment legally and properly brought themselves under the provisions of our Workman's Compensation Act the remedy for the recovery of compensation for the death of decedent, the employee, is exclusively that provided by that act, if decedent left surviving him dependents, and which we and other courts have held supplants and supersedes the common-law action for the recovery of damages based upon negligence of the employer. It therefore follows that the court properly overruled the demurrer to the

second paragraph of appellee's answer, and in dismissing the action as to it when appellant declined to plead further.

Wherefore the judgment is affirmed.