COMMONWEALTH of Kentucky,
Appellant,

v.

Betty ALLEN and Pamela
Cook, Appellees.

No. 97–SC–713–DG.

Supreme Court of Kentucky.

Nov. 19, 1998.

A.B. Chandler III, Attorney General,
Gregory C. Fuchs, Assistant Attorney Gener-

al, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, for appellant.

Vincent J. Eiden, Stewart & Roelandt, Crestwood, KY, for appellee, Betty Allen.

Edmund P. Karem, Sitlinger, McGlincy, Steiner, Theiler & Karem, Louisville, KY, for appellee, Pamela Cook.

LAMBERT, Cheif Justice.

This Court granted discretionary review (CR 76.20) to decide whether an individual's duty to report suspected child abuse to state authorities pursuant to KRS 620.030 is discharged by reporting the suspected abuse to supervisory personnel. Resolution of this issue turns on the proper interpretation of KRS 620.030(1), and specifically on the relationship, if any, between the statutory provision which defines an individual's reporting duty and the provision which defines the supervisor's duty. The secondary question is whether a teacher who informs her principal of suspected child abuse is entitled to immunity from criminal prosecution pursuant to KRS 620.050.

Appellee Allen is a teacher in the Bullitt County Schools, and Appellee Cook is a counselor in that system. During the 1992–93 school year, students reported to each of the appellees that another teacher had engaged in sexual contact with students. Following school protocol, each appellee told the school principal what she had heard from the students. Thereafter, a Bullitt Circuit Court indictment alleged that appellees failed to report the suspected abuse to a local law enforcement agency, the Kentucky State Police, the Cabinet for Human Resources or its designated representative, the Commonwealth's Attorney, or the County Attorney in violation of KRS 620.030(1).

The offenses charged were misdemeanors. The Bullitt District Court dismissed the charges prior to trial, finding that there was no evidence of intent to violate the statute. The circuit court reversed and remanded the case.

Upon remand to the Bullitt District Court, appellees claimed immunity from prosecution pursuant to KRS 620.050. The trial court once again dismissed the charges, finding that by informing the school principal of the suspected abuse, appellees had made a report as required by KRS 620.030(1) and were thus immune from prosecution under KRS 620.050. The circuit court again reversed, holding that whether appellees had made a proper report pursuant to KRS 620.030 and whether KRS 620.050 immunity is available are factual determinations for a jury. The Court of Appeals granted discretionary review and reversed, holding that a report to a supervisor is a report under KRS 620.030 entitling appellees to immunity under KRS 620.050. For the reasons hereinafter set forth, we reverse the Court of Appeals and remand for further consistent proceedings.

■ The first issue on appeal is whether a report to a supervisor is a proper report pursuant to the child abuse reporting statute, which provides that

> Any person who knows or has reasonable cause to believe that a child is dependent, neglected or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or the Kentucky Police; the state cabinet or its designated representative; the Commonwealth's Attorney or the County Attorney; by telephone or otherwise.

KRS 620.030(1). Although there is no provision that discharges the duty to report to designated authorities, appellees contend that they are relieved of the reporting requirement because they told their supervisor, the school principal, of the suspected abuse. The foundation for this contention is the second sentence of the subsection, which states that

> Any supervisor who receives from an employee a report of suspected dependency, neglect or abuse shall promptly make a report to the proper authorities for investigation.

*Id.* Appellees argue that it is inconsistent to impose a reporting duty on a supervisor if an employee has an independent duty to make a report, a situation that would lead to multiple, and perhaps superfluous, reports of the same incident.

In a perfect world where every person discharged every legal duty, perhaps this would be so. However, in this world where imperfections abound, it is not illogical or inefficient for the legislature to require every individual entrusted with the care and supervision of children to be required to report crimes against those children. As stated by the high court of Florida with regard to that state's child abuse reporting statute,

> The reason for this requirement [that an individual report abuse even if the incident has already been reported] is that reports of the same incident of abuse from different sources tend to show the gravity of the situation. This also gives HRS workers the ability to contact more sources in order to investigate the incident and confirm or deny that it happened.

*Barber v. Florida*, 592 So.2d 330, 335 (Fla. App.1992). Moreover, there is no guarantee that a supervisor will follow through with the duty and relay the report to governmental authorities, particularly with regard to such a sensitive matter. A supervisor, especially a school principal who would be a colleague of a teacher accused of abuse, might well be reluctant to tell authorities that a colleague or subordinate is a suspected child abuser. By requiring each person with knowledge to report child abuse in his or her individual capacity, the General Assembly more nearly assured that the suspected abuse would be investigated by state authorities. Rather than relieving appellees of their duty to report, we believe the reporting requirement on supervisory personnel is demonstrative of unequivocal legislative intent.

If the legislature had intended to create an exception to the mandatory reporting duty, it could have explicitly done so, following the example of other state statutes. For example, the parallel Wyoming statute provides:

> (a) Any person who knows or has reasonable cause to believe or suspect that a child has been abused or neglected or who observes any child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, shall immediately report it to the child protective agency or local law enforcement agency or cause a report to be made.

> (b) If a person reporting child abuse or neglect is a member of the staff of a medical or other public or private institution, school, facility, or agency, he shall notify the person in charge or his designated agent as soon as possible, who is thereupon also responsible to make the report or cause the report to be made. Nothing in this subsection is intended to relieve individuals of their obligation to report on their own behalf *unless a report has already been made or will be made.*

WYO.STAT § 14-3-205 (emphasis added). This statute clearly relieves an individual of the reporting duty in cases where the incident has already been or will be reported. A similar statute enacted in Indiana contains an explicit discharge provision:

> Nothing in this section is intended to relieve individuals of their obligation to report on their own behalf, *unless a report has already been made to the best of the individual's belief.*

IND.CODE 31-6-11-3 § 3(b) (emphasis added).

■ This Court has stated that a "fundamental rule of statutory construction is to determine the intent of the legislature, considering the evil the law was intended to remedy." *Beach v. Commonwealth*, Ky., 927 S.W.2d 826, 828 (1996); *see also Kelly v. Marr*, 299 Ky. 447, 185 S.W.2d 945, 949 (1945). To determine legislative intent, a court must refer to "the words used in enacting the statute rather than surmising what may have been intended but was not expressed." *Flying J Travel Plaza v. Commonwealth*, Ky., 928 S.W.2d 344, 347 (1996) (citing *Kentucky Association of Chiropractors, Inc., v. Jefferson County Medical Society, et al.*, Ky., 549 S.W.2d 817 (1977)). Similarly, a court "may not interpret a statute at variance with its stated language." *Layne v. Newberg*, 841 S.W.2d 181, 183 (1992) (citing *Gateway Construction Company v. Wallbaum*, Ky., 356 S.W.2d 247 (1962)). Moreover,

> Where a statute on its face is intelligible, the courts are not at liberty to supply words or make additions which amount, as sometimes stated to providing *casus omissus*, or cure an omission, however just or

desirable it might be to supply an omitted provision. It makes no difference that it appears the omission was mere oversight. *Hatchett v. City of Glasgow,* Ky., 340 S.W.2d 248, 251 (1960). In a constitutional challenge to a statute similar to KRS 620.030, the Minnesota Supreme Court acknowledged legislative prerogative and upheld criminal misdemeanor penalties for failure to report maltreatment of minors, stating:

> The issue is not whether this court agrees with the legislature's chosen solution to the admittedly difficult problem of encouraging the reporting of child abuse. Although commentators are in disagreement about the wisdom of the legislature's criminally punishing negligent conduct of this sort, the legislature is clearly free to do so.... Here the legislature undoubtedly concluded that attaching misdemeanor criminal liability to the negligent failure to file a mandated report was necessary to provide a strong enough motive to comply with the mandatory reporting provisions of the statute.

*State v. Grover,* 437 N.W.2d 60, 65 (Minn. 1989).

■ As in Florida and in Minnesota, the Kentucky General Assembly has chosen to attach criminal misdemeanor penalties for the failure to report suspected child abuse to certain designated state authorities. Assessing the wisdom of this action is not within the purview of the judiciary. The language of KRS 620.030(1) is clear and unambiguous. All individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse. Supervisors have a dual responsibility. They must not only report in their individual capacity, they must also relay to authorities any reports they receive from their subordinates.

The foregoing conclusion is strengthened by the final sentence of KRS 620.030(1), which states that "[n]othing in this section shall relieve individuals of their obligations to report." This statutory language could not be more definitive. KRS 620.030(1) does not relieve any individual of the duty to report; the statute merely imposes an additional, heightened duty on supervisors.

■ The next issue is whether appellees' reports to the school principal entitled them to immunity from prosecution under KRS 620.050, which states that

> Anyone acting upon reasonable cause in the making of a report under KRS 620.030 to 620.050 in good faith shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding.

KRS 620.050(1). This immunity provision has two basic requirements: the report must be made pursuant to KRS 620.030 to 620.050, and the reporter must act in good faith. A report to a supervisor based upon school protocol is not a report within the meaning of KRS 620.030 as discussed *supra,* and therefore appellees do not meet the threshold requirement for the protection of this immunity statute even if it was otherwise applicable. Moreover, while we need not decide in this case, the immunity statute appears to grant protection from civil or criminal actions for libel or slander or actions arising out of the act of reporting rather than creating an immunity where reporting has been defective or has failed.

■ These cases have been twice dismissed prior to trial. As such, the record on appeal is undeveloped and we know little other than the essential claims and preliminary defenses. In general, cases should not be dismissed at such a preliminary stage. We so stated in *Commonwealth v. Hicks,* Ky., 869 S.W.2d 35, 37 (1994), "[a] party who announces ready for trial is entitled to go forward and it is not within the province of the trial judge to evaluate the evidence in advance to determine whether a trial should be held... [t]he time for an evaluation is upon motion for a directed verdict." The trial court erroneously dismissed the indictments prior to a trial at which the evidence could be presented. Hereafter, the proper time for the trial court to consider evidentiary sufficiency is after the evidence has been heard and upon a motion for directed verdict.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and this

cause is remanded to the trial court for further proceedings consistent with this opinion.

COOPER, STUMBO, and STEPHENS, JJ., concur.

COOPER files a separate concurring opinion in which STUMBO, J., joins.

JOHNSTONE, J., dissents by separate opinion in which GRAVES and WINTERSHEIMER, JJ., join.

COOPER, Justice, concurring.

I fully concur with the majority opinion in this case. I write separately to dispel any suggestion that Appellees' failure to report the alleged abuse to proper authorities resulted in "no harm done," and to address the assertion that Appellees were following school "protocol" by not reporting the alleged sexual abuse to proper authorities.

The record in this case contains evidence that two sixth-grade girls were sexually abused by one of their teachers, Donald Mullins, in the fall of 1992. Appellees admit that this information was reported to them in November 1992 and that they, in turn, reported the information not to the authorities required by KRS 620.030(1), but to their school principal. He, too, failed to report the alleged abuse to proper authorities and has also been charged under KRS 620.990. In March 1993, after Mullins allegedly abused yet another sixth-grade girl, that child and several eyewitnesses reported the incident to an assistant principal, and all three instances were then reported to proper authorities. If Appellees had obeyed their statutory duty when they were informed of Mullins's abuse of his first two victims, the third victim might have been spared the same fate. Thus, this case represents the perfect example of why the statute requires that suspected child abuse be reported directly to "a local law enforcement agency or the Kentucky state police; the cabinet or its designated representative; the commonwealth's attorney or the county attorney;" and that a report only to a supervisor is insufficient.

Although I deem it to be irrelevant, the existence of a school "protocol" requiring Appellees to report alleged sexual abuse to their principal instead of to proper authorities is illusory at best. The only statement cited in support of this assertion is found at page 57 of the Bullitt County Public Schools Guidelines and consists of the following two sentences:

> The first contact *for* any information should always be the principal in the school. Below is a listing of services and the individual responsible for that service in the Central Office. (Emphasis added.)

Below this entry is the list of those persons responsible for providing specific services, *e.g.*, attendance, maintenance, busing, etc. All of those persons are identified by name, except the person responsible for "Child Abuse," who is identified only as " * Social Worker." Since the remainder of the Guidelines were not filed in this record, I am unable to discern why this person is not identified by name or the reason for the asterisk. Could it be that the " * Social Worker" is an employee of the Cabinet for Families and Children (formerly Cabinet for Human Resources), who would be an appropriate person to whom suspected child abuse should be reported pursuant to KRS 620.030(1)? Regardless, the statement that "[t]he first contact *for* any information should always be the principal in the school" connotes that the principal will be the source of the information, not the recipient thereof.

STUMBO, J., joins this concurring opinion.

JOHNSTONE, Justice, dissenting.

I take respectful, but sharp, issue with the majority's holding that the appellees failed to satisfy the requirements of KRS 620.030(1) by reporting the suspected child abuse to their principal, and that the appellees were not entitled to immunity pursuant to the provisions of KRS 620.050(1).

It is undisputed that, upon hearing about inappropriate sexual contact by a fellow teacher, both Allen and Cook notified the principal of their school of the allegations. Nor is there an issue that such reporting conformed to local school protocol and the guidelines of the Bullitt County Public Schools.

Yet, the majority concludes that the appellees failed to satisfy their mandatory duty imposed by the first sentence of KRS 620.030(1), thereby nullifying the import of the second sentence which reads:

> Any supervisor who receives from an employee a report of suspected dependency, neglect or abuse shall promptly make a report to the proper authorities for investigation.

The flaw in the majority's opinion is in its search for the intent of the legislature. I certainly agree that in construing the provisions of a particular statute, a universal rule of judicial construction is to determine and carry out the intent of the legislature. *Reed v. Greene*, Ky., 243 S.W.2d 892, 893 (1951). KRS 446.080. Moreover, I concur that "[a] well-established rule of statutory construction is that the courts will consider the purpose which the statute is intended to accomplish—the reason and spirit of the statute—the mischief intended to be remedied." *City of Louisville v. Helman*, Ky., 253 S.W.2d 598, 600 (1952).

The purpose of the statute at issue is obvious. The legislature wished to make clear that there is a legal obligation upon any person with reasonable cause to suspect that a child has been abused or neglected to report that belief or suspicion to authorities so that the child may be promptly protected. Surely, this purpose was satisfied in the case at bar.

Unfortunately, the majority opinion speculates that the second sentence of KRS 620.030(1) was meant to impose a "dual responsibility" on supervisors. The majority overlooks another well-recognized rule of construction repeated more than fifty years ago in *Johnson v. Frankfort & Cincinatti Railroad*, Ky., 303 Ky. 256, 197 S.W.2d 432 (1946):

> A cardinal rule for the interpretation of statutes—if there is any doubt from the language employed as to the intent and purpose of the Legislature in enacting it—is that courts should avoid adopting a construction which would be unreasonable and absurd in preference to one that is "reasonable, rational, sensible and intelligent"....

*Id.* at 434.

In my opinion, it is more rational and sensible to interpret the sentence regarding a supervisor who receives a report from an employee as one contemplating the exact scenario that occurred in this case. Can one reasonably believe that the legislative intent was to hold educators, as Allen and Cook, criminally responsible for reporting only to their principal? To believe such is absurd. A statute should be construed, if possible, so that no part of it is meaningless or ineffective. *Brooks v. Meyers*, Ky., 279 S.W.2d 764, 766 (1955). I submit that the majority's interpretation of the language referring to a supervisor receiving an employee report renders that language meaningless.

Since the appellees, in reporting in good faith to their supervisor, satisfied the reporting requirements of KRS 620.030, they are immune from any liability pursuant to KRS 620.050(1). I cannot comment more eloquently on this issue than Judge Miller of the Kentucky Court of Appeals when he stated:

> "We recognize the unique circumstances indigenous to the school environment and the consequent value of a teacher immediately reporting to the principal any suspected abuse of a student. Indeed, KRS 620.030(1) anticipates such a report. It specifically provides that the supervisor "shall promptly" convey same to proper authorities." Is it not axiomatic that statutory compliance is effectuated upon the making of a report which has been presupposed by the statute? We think it is, and therefore think Allen's and Cook's respective reports to their principal conformed to the necessary implication of the statute. Moreover, we view it illogical that a statute would anticipate such a report by an employee and specifically provide for the supervisor's duty thereunder, while, at the same time, condemn such report as being nonconforming. As such, we are of the opinion that Allen's and Cook's respective reports of suspected abuse to the principal effectively discharged their duties under KRS 620.030(1).

**284** ■ 

*Allen v. Commonwealth,* 95–CA–3122–DG at 4 (rendered April 11, 1997).

The Wisconsin Court of Appeals faced a similar situation in the case of *Phillips v. Behnke,* 192 Wis.2d 552, 531 N.W.2d 619 (1995). There, the Behnkes reported allegations of sexual contact between their daughter and teacher Phillips to a school administrator, rather than the county department or police as mandated by the statute. As in the case at bar, the school administrator reported the allegations to the proper authorities. In determining whether the Behnkes were entitled to immunity, the Wisconsin court held:

> To construe the statute as limiting immunity solely to the individual who actually reported the alleged abuse or neglect to the authorities would eviscerate the protections of the statute and lead to absurd results. For example, if five school teachers obtained information that would require reporting under the statute and agreed that one of them would report the information, the teacher who actually reported the information would receive immunity. The other teachers, however, would be deprived of immunity under the statute, despite the fact that they determined a report should be made and designated a reporter. Certainly the legislature did not intend to create such an absurd result. Accordingly, we conclude that the Behnkes were entitled to immunity, despite the fact that they did not report the allegations directly to the authorities, because they reported the necessary information to one who was expected to, and did, report the information to the proper authorities.

*Id.* at 622.

Today, the field of education is marred by pitfalls and stumbling blocks for teachers and administrators. For causes too numerous to mention, educators are called upon to face ever-increasing challenges and dilemmas without adequate resources or support. To further litter the educational landscape with the possibility of criminal prosecution for good faith attempts to protect children from abuse defies logic and good common sense. I would affirm the Court of Appeals and let the appellees go about their business of educating our children.

GRAVES and WINTERSHEIMER, JJ., join this dissent.