Brooke NELSON, Individually, and Brooke Nelson, as next friend of F.B., A Minor, Appellant

v.

Diane TURNER; Fayette County Public Schools; Fayette County Board of Education; and Kentucky School Boards Insurance Trust, Appellees.

No. 2007–CA–000489–MR.

Court of Appeals of Kentucky.

June 6, 2008.

**38**

J. Dale Golden, Michael T. Davis, Shaye J. Page, Lexington, KY, for Appellant.

Mark Fenzel, Dana L. Collins, Kevin L. Chlarson, Louisville, KY, for Appellees Fayette County Board of Education, Fayette County Schools, and Diane Turner.

Guy R. Colson, Barry Miller, Christina Vessels, Lexington, KY, for Appellee Kentucky School Board Insurance Trust.

Before COMBS, Chief Judge; CLAYTON and MOORE, Judges.

*OPINION*

CLAYTON, Judge.

Brooke Nelson, individually, and as next friend of F.B., her minor daughter, appeals from the summary judgment and order of the Fayette Circuit Court dismissing her claims for personal injury against the Fayette County Public Schools;[1] the Fayette County Board of Education; Diane Turner ("Turner"), individually, and in her capacity as a public school teacher; and the Kentucky School Boards Insurance Trust ("KSBIT"). Nelson's claims against Turner and the Board of Education arise out of the alleged negligent supervision of

---

1. The Fayette County Board of Education asserts in its brief that the Fayette County Public Schools is not a recognized legal entity and is not a proper defendant or appellee. Since Nelson's arguments on appeal do not include any allegation of error with respect to any determination regarding Fayette County Public Schools, we have not addressed the issue.

F.B.; the failure of Turner to report a sexual assault under standards established by statute; and the tort of outrage. Nelson's claims against KSBIT arise out of charges of several instances of bad faith on its part, as well as its refusal to investigate F.B.'s claims and to communicate with Nelson or her counsel, or to attempt timely to resolve the dispute. After having reviewed and considered the oral and written arguments of counsel, we affirm in part and vacate and remand in part.

The record before us is limited to transcripts of portions of sworn depositions, which reveal the sequence of events underlying the complaint. In November 2005, five-year-old F.B. was registered as a kindergarten student in Turner's class at a public elementary school in Fayette County. On November 16 of that same year, F.B. was sexually assaulted in the classroom during regular school hours by a female classmate, C.Y., who was also enrolled in Turner's class. F.B. described the incident to her mother two days after it had occurred. Nelson then telephoned Turner and reported that F.B. had complained that C.Y. had "put her finger up my butt" at school.

According to Turner, Nelson described a situation where F.B. had complained that C.Y. had been "up her butt," and she testified that she understood from this conversation that C.Y. had sexually assaulted F.B. Turner did not feel that Nelson was greatly upset as she related the incident described by F.B.; however, she assured Nelson that she would separate the children.

Turner's telephone conversation confirmed for Nelson her own impression that F.B. and C.Y. played together quite frequently at school. On the morning of Monday, November 21st, Turner advised her teaching assistant that F.B. and C.Y. would no longer be allowed to be close to one another. She also admonished C.Y. that touching someone's bottom was wrong. In an effort to keep the children apart, Turner assigned them specific seats and forbade them from attending the restroom at the same time.

After the lunch period on November 21, 2005, F.B. told Turner that C.Y. had been "up my butt" in the classroom during reading group, but F.B. did not appear upset. While Turner was still unsure of what the contact involved, she immediately questioned C.Y., who admitted that she had touched F.B. Turner left the children in her assistant's care and attempted to locate a school administrator for advice. Unable to find the school principal, Turner eventually carried on with her instructional duties. C.Y. did not return to the classroom that day.

Nelson testified that during the evening hours of November 21st, F.B. reported to her aunt, Nelson's sister Bridget, that C.Y. had stuck her finger into F.B.'s genitals. Nelson discussed the incident with F.B. on the way to school on the morning of November 22nd. Nelson was unable to meet with the principal, Freida Collins, but telephoned her that afternoon. Collins related to Nelson that she knew nothing about the situation but indicated that she would address it immediately by having both children report to her office for a talk. Following the conference, Collins reported to Nelson that C.Y. had admitted that she had accidentally touched F.B. between the legs, but that they denied that C.Y. had put her finger up F.B.'s bottom. Collins indicated to Nelson that she would continue her investigation. Concluding that the incidents were accidents, Collins did not report the matter to the authorities.

At the end of the November 22nd school day, F.B. told her mother that C.Y. had pushed her into a table, had rubbed and pinched her nipples, and had touched her

anus and vagina—all while they were in the classroom together. During the evening of November 22nd, Nelson took F.B. to the University of Kentucky Medical Center for a physical examination. Doctors there noted "some small irritation of the vagina" and advised Nelson that she would need to speak to a social worker about the events described by F.B. University medical personnel reported the incident to police. F.B. did not return to the Fayette County Public Schools, and an internal investigation followed.

On March 3, 2006, Nelson filed an action against KSBIT. In her complaint, Nelson alleged that KSBIT had violated several portions of the Kentucky Insurance Code ("KIC"), by engaging in unfair claims settlement practices; failing timely to respond to the claimant; failing timely to complete an investigation of the matter; engaging in unfair or deceptive acts; failing to acknowledge and to act promptly upon communications regarding the claimant; failing to adopt and to implement standards for the prompt investigation of claims; refusing to pay the claim; and failing to provide a reasonable explanation of the basis for the denial of the claim or of the lack of an offer of a compromise settlement. Nelson also asserted a claim of intentional infliction of emotional distress against KSBIT. Nelson sought both compensatory and punitive damages.

Following a hearing upon KSBIT's motion seeking dismissal of the claims, the trial court ruled that the action would be dismissed without prejudice. Before the court's written order was entered by the clerk, however, Nelson filed a motion to amend the complaint. In an order entered on May 11, 2006, the trial court permitted Nelson to file an amended complaint.

In her amended complaint, Nelson renewed her allegations against KSBIT and also included new and separate allegations against Turner and the Fayette County Board of Education ("Board"). Nelson alleged that Turner had failed to exercise ordinary care to supervise the children in her classroom and to report to enforcement officials the sexual assault perpetrated by C.Y. as required by Kentucky Revised Statutes ("KRS") 620.030. Under common law principles of agency, Nelson alleged that the Board was vicariously liable for damages caused by Turner's failure to protect F.B. from harm. Finally, Nelson claimed that Turner's inappropriate response to the situation amounted to outrageous conduct. She sought compensatory and punitive damages along with attorneys' fees, costs and expenses.

Each of the named defendants answered and denied Nelson's substantive allegations. In addition, Turner and the Board contended that they were entitled to the protections of governmental and qualified official immunity.

On January 19, 2007, following a period of extensive discovery, Turner and the Board filed a motion for summary judgment. In the memorandum supporting the motion, Turner and the Board argued that they were entitled to judgment as a matter of law. The Board contended that it could not be sued in tort since it is shielded by governmental immunity and that it could not be held vicariously liable for Turner's alleged failure to protect F.B. under firmly established legal principles.

Turner contended that her supervision of F.B. was undertaken in good faith and as part of her discretionary functions as a primary school teacher. She argued that under these circumstances, she was entitled to qualified official immunity from liability. Turner also argued that she was not required by the provisions of KRS 620.030 to make a report of the alleged assault to any local law enforcement agency. Regardless of any arguable applicabil-

ity of the statute, she contended that it did not create a private right of action enforceable by Nelson. Finally, Turner argued that Nelson could not establish a *prima facie* case to support the allegation of outrageous conduct. Nelson opposed the motion for summary judgment and submitted her own memorandum in support of her position.

On February 6, 2007, KSBIT filed a motion to dismiss the action against it. KSBIT reasoned that since Turner and the Board were entitled to judgment as a matter of law, no claims predicated upon its bad faith with respect to the claim could survive since its alleged bad faith was wholly derivative of a viable, underlying cause of action.

Following a hearing, the Fayette Circuit Court determined that Turner and the Board were entitled to claim the shield of immunity and that they were entitled to judgment as a matter of law. The court entered judgment in their favor on March 1, 2007, agreeing with KSBIT that the claims asserted against it necessarily failed as a result of the dismissal. KSBIT's motion to dismiss the action was granted as well. This appeal followed.

On appeal, Nelson argues that the Fayette Circuit Court erred by summarily dismissing her negligence claims against Turner and by dismissing her bad faith claims against KSBIT. Summary judgment is proper where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure ("CR") 56.03; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991).

Nelson contends that Turner cannot claim immunity because her duty to supervise students and her duty to report suspected child abuse to a local law enforcement agency pursuant to KRS 620.030 are ministerial rather than discretionary in nature.

We shall first address the nature of Turner's classroom duties. Nelson contends that Turner's obligation to supervise her students and to protect them from harm were ministerial functions of her position. As a consequence, Turner would not enjoy qualified immunity but would be liable for damages upon a finding of negligence with respect to these claims.

It is well established in Kentucky that a public school teacher can be held liable for injuries caused by the negligent supervision of her students. *Williams v. Kentucky Dep't. of Educ.*, 113 S.W.3d 145 (Ky.2003) *citing Yanero v. Davis*, 65 S.W.3d 510 (2001). "The premise for this duty is that a child is compelled to attend school so that 'the protective custody of teachers is mandatorily substituted for that of the parent.'" *Williams, supra,* at 148 (*quoting Yanero* at 529, *quoting McLeod v. Grant County School District No. 128*, 42 Wash.2d 316, 255 P.2d 360, 362 (1953)). A special, fiduciary quasi-parental relationship is created as a practical matter under such circumstances.

> The 'special relationship' thus formed between a school district and its students imposes an affirmative duty on the district, its faculty, and its administrators to take all reasonable steps to prevent foreseeable harm to its students.

*Williams, supra,* at 148 (citations omitted). Additionally, the provisions of KRS 161.180(1) explicitly require each public school teacher and administrator to hold pupils to strict account for their conduct on school premises. It provides as follows:

> Each teacher and administrator in the public schools shall in accordance with the rules, regulations, and bylaws of the board of education made and adopted pursuant to KRS 160.290 for the conduct of pupils, hold pupils to a strict account

for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities.

■ A teacher does, however, retain some discretion with respect to the means or method by which to exercise the duty to supervise students properly and to protect them from foreseeable harm.

Nelson contends that the provisions of KRS 620.030 required Turner to make a report of the alleged abuse that had occurred in her classroom to local law enforcement officials. KRS 620.030 requires any person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused to report this incident to a local law enforcement agency or the Kentucky State Police; the cabinet or its designated worker; the Commonwealth's attorney or the county attorney, either by telephone or otherwise. The statute also defines any person to include a teacher or school personnel. The language of this act would thus appear to require Turner to have reported the incident. KRS 600.020, however, defines an abused or neglected child as:

[A] child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child. . . .

. . . .

(e) Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;

(f) Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child[.]

To find that KRS 620.030 does not apply, there must be a finding that the act committed upon the child is not an act of sexual abuse. For purposes of Kentucky's juvenile code, KRS Chapter 600, the defi-

nition of a neglected or abused child is set forth at KRS 600.020 as follows:

[A] child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child:

(a) Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;

(b) Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

(c) Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child including, but not limited to, parental incapacity due to alcohol and other drug abuse as defined in KRS 222.005;

(d) Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

(e) Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;

(f) Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child;

(g) Abandons or exploits the child;

(h) Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being. . . . .

(i) Fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and

remaining in foster care for fifteen (15) of the most recent twenty-two (22) months[.]

█ If sexual abuse has occurred, then the mandatory reporting requirement in KRS 620.030 would have required the teacher to report this incident and such mandatory reporting would result in this being considered a ministerial rather than a discretionary act which would preclude Turner from claiming qualified official immunity.

In its order of February 28, 2007, the trial court determined that Turner was entitled to qualified official immunity from the negligence claims asserted against her because her decision in determining whether the facts of this case constituted abuse was discretionary in nature. The court cited and relied upon *Yanero v. Davis,* 65 S.W.3d 510 (Ky.2001). The *Yanero* Court held that:

> [W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment.... Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment....

*Id.* at 522. *Yanero* further provides that:

> [A]n officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts[.]

*Id. Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), also addresses the issue of qualified official immunity:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* at 818, 102 S.Ct. 2727.

█ The trial court has determined that this was a discretionary act; however, the trial court did not provide any analysis as to how it reached the decision that this was a discretionary act in light of a mandatory reporting requirement. This analysis by the trial court is necessary because if the mandatory reporting laws apply, then Turner could not be afforded the protection of qualified official immunity. If the applicability of the mandatory laws in this matter creates "a legally uncertain environment," then qualified official immunity may be afforded to Turner. Therefore, this matter should be remanded to the trial court for a determination of the applicability of KRS 620.030.

█ Next, Nelson argues that the trial court erred by summarily dismissing her claim for damages based on Turner's allegedly outrageous conduct. We disagree.

█ The elements of a claim of the tort of outrage are as follows:

1. The wrongdoer's conduct must be intentional or reckless;
2. The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3. There must be a causal connection between the wrongdoer's conduct and the emotional distress;

4. The emotional distress must be severe.

*Kroger Co. v. Willgruber,* 920 S.W.2d 61, 65 (Ky.1996), *citing Craft v. Rice,* 671 S.W.2d 247, 249 (Ky.1984).

 It is a question of law whether the offensive conduct can reasonably be regarded as so extreme and outrageous as to permit recovery. *Whittington v. Whittington,* 766 S.W.2d 73 (Ky.App.1989). The trial court did not err in this case by concluding that the objectionable behavior does not support a viable claim of outrageous conduct.

Our review of the facts in a light most favorable to Nelson indicates that Turner responded promptly to Nelson's concerns about the contact between F.B. and C.Y. Turner advised her assistant that the children would be—and were to remain—separated. She took action to prevent the recurrence of the first incident. Turner reminded C.Y. to keep her hands to herself; she rearranged the children's seating, and they were no longer permitted to attend the restroom at the same time. While Nelson was not satisfied with Turner's reaction to the alleged incidents, as a matter of law, Turner's behavior cannot be regarded as so extreme or outrageous as to support recovery for outrage in this case.

We vacate the summary judgment entered in favor of Turner with respect to the allegation of negligent supervision. Because this claim must return to the trial court, we cannot affirm the court's dismissal of Nelson's third-party bad faith action against KSBIT. As long as questions remain with respect to Turner's alleged liability in the underlying negligence action, the question of KSBIT's obligation to pay the claim cannot be adjudicated as a matter of law. Therefore, we also remand the claims asserted by Nelson against KSBIT.

The Fayette Circuit Court's summary judgment is vacated in part, and this matter is remanded to that court for further proceedings consistent with this opinion.

MOORE, Judge, concurs.

COMBS, Chief Judge, concurs in part and dissents in part by separate opinion.

COMBS, Chief Judge.

While I agree with the sound reasoning of the majority opinion on most of the issues before us, I differ as to the issue of the reporting requirement. As the majority correctly noted, the mandatory nature of the reporting requirement (KRS 620.030) would render the teacher's duty to be ministerial rather than discretionary, thus depriving Ms. Turner of the protection of a qualified immunity.

The majority would remand this matter to the trial court for its analysis of the applicability of KRS 620.030. However, in reviewing a summary judgment, we must analyze issues of law *de novo. Cinelli v. Ward,* 997 S.W.2d 474 (Ky.App.1998). We are dealing with a pure issue of law requiring us to instruct the trial court on this point rather than to inquire as to its reasoning concerning the applicable law. I perceive our duty at this juncture to be to direct rather than to defer.

Kentucky case law appears to be clear on the mandatory nature of the duty to report incidents of suspected sexual abuse. In *Commonwealth v. Allen,* 980 S.W.2d 278 (Ky.1998),[2] our Supreme Court upheld

---

**2.** This case was the subject of a rather exhaustive law review article; see Eric A. Hamilton, Note, *Commonwealth v. Allen: An Eye-opener*

the **criminal prosecution** of a teacher who failed to report suspected sexual abuse of a student. In construing KRS 620.030(1), the Court held that the teacher was not entitled to rely upon the reporting of the conduct by the school principal but rather that she had an independent, mandatory duty of her own to report—even to the point of redundancy in the filing of multiple reports on the same occurrence.

Appellees argue that it is inconsistent to impose a reporting duty on a supervisor if an employee has an independent duty to make a report, a situation that would lead to multiple, and perhaps superfluous, reports of the same incident.

In a perfect world where every person discharged every legal duty, perhaps this would be so. However, in this world where imperfections abound, **it is not illogical or inefficient for the legislature to require** *every individual entrusted with the care and supervision of children* **to be required to report crimes against those children.** As stated by the high court of Florida with regard to that state's child abuse reporting statute,

> The reason for this requirement [that an individual report abuse even if the incident has already been reported] is that reports of the same incident of abuse from different sources tend to show the gravity of the situation. This also gives HRS workers the ability to contact more sources in order **to investigate the incident and confirm or deny that it happened.**

(Emphases added.) *Id.* at 279–280.

The *Allen* court emphasized the overarching nature of the legislative intent as to KRS 620.030(1) to insure the opportunity for an investigation (not necessarily a prosecution) of the alleged conduct:

By requiring each person **with knowledge** to report child abuse in his or her individual capacity, the General Assembly more nearly assured that the suspected abuse would be investigated by state authorities. Rather than relieving appellees of their duty to report, we believe the reporting requirement on supervisory personnel is demonstrative of **unequivocal legislative intent.**

If the legislature had intended to create an exception to the mandatory reporting duty, it could have explicitly done so . . . .

*Id.,* at 280 (Emphases added.)

As a result of *Allen,* Kentucky has adopted a tough (indeed almost harsh as applied) policy toward school personnel. As the *Allen* court noted, to construe this statute otherwise would be "at variance" with its clearly stated language in violation of established principles of statutory construction. *Id.*

Under the facts as recounted by Nelson, I am persuaded that Turner had a mandatory duty to make a report of the alleged inappropriate contact that occurred between the students in her classroom. Because I believe that this is an established issue of law, I would vacate entry of summary judgment and remand for a trial on the merits rather than remanding to ask the court to construe the applicability of KRS 620.030.