## Swift v. Southeastern Greyhound Lines.

April 30, 1943.

138

Charles Wylie for appellant.

Stoll, Muir, Townsend, Park & Mohney and Keenon & Odear for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This case involves the construction of Section 271.320 of the Kentucky Revised Statutes. The questions of whether the Revised Statutes include all of the laws of the Commonwealth, and whether Chapter 208 of the Acts of 1942, which enacted the Revised Statutes, is constitutional, raised herein, have been disposed of affirmatively in the case of Fidelity & Columbia Trust Co., Trustee, v. Meek, 294 Ky. 122, 171 S. W. (2d) 41. Since a reference to that opinion will give our reasons for those rulings, it is unnecessary to discuss further those questions.

The question involved herein comes up in this manner: Ann Swift owns stock in the Southeastern Greyhound Lines. The Southeastern is a Kentucky corporation and operates a large transportation system in several of the southern states, as well as in certain communities in West Virginia and Ohio. Its capital stock, surplus and undivided profits amount to a sum in excess of $6,700,000. It owns a piece of property in Birmingham, Alabama, which is worth approximately $140,000. This property was purchased for the purpose of erecting a bus terminal. When it developed that it would be desirable to build a union terminal in Birmingham the Southeastern decided to transfer the property to the Greyhound Bus Depot of Birmingham, Incorporated.

Being of the opinion that KRS 271.320 prohibits the Southeastern from selling any of its property without the consent of three-fourths of its stockholders, the appellant filed this declaratory judgment proceeding, seeking a declaration of rights on the aforementioned questions.

Subsection 1 of KRS 271.320 follows: "Any corporation may sell and convey any of its property, rights, privileges and franchises." This provision takes the place of Section 883b-1 of Carroll's Kentucky Statutes. That section provided:

"Any corporation now or hereafter organized under the laws of this state or of any other state or territory of the United States shall have power to sell and convey all of its property, rights, privileges, franchises, easements, rights of way, and all other property and property rights it may use or possess."

Subsection 2 of KRS 271.320 contains the same provisions as did Section 883b-3 of Carroll's Kentucky Statutes, relative to the necessity for obtaining the consent of the holders of not less than three-fourths of the capital stock of the vendor corporation and the rights of dissenting stockholders. It is apparent at once that the word "any" in the Revised Statutes has replaced the word "all" in the old Statutes. This forms the basis of the contention of the appellant that the Southeastern can not convey the property in Birmingham to the Bus Depot.

In construing statutes the courts may look to the reasons for, the purpose back of, and the circumstances surrounding, the enactment of a law in order to arrive at its proper construction. It is to be presumed always that the legislature intended for the law to have the most beneficial effect, and that it be given the most beneficial construction. A review of the history of the statutory authorization in question makes it quite apparent that the legislature was dealing only with the proposition of permitting one corporation to sell all of its property to another. Section 883b-1 of Carroll's Kentucky Statutes was a part of Chapter 31 of the Acts of 1912. The original authorization was that any corporation organized in Kentucky could, at any time within two years before the expiration of its charter, sell to any other corporation organized under the laws of Kentucky, and engaged

in the same character of business, all of its property, rights, privileges and franchises, with the consent of three-fourths of the stockholders of the selling corporation. Section 883b-1, Carroll's Kentucky Statutes, quoted above, constituted an amendment to the section as enacted in 1912. See Chapter 15, Acts 1918. Obviously, the 1918 revision of the section constituted a liberalization of the authorization for a corporation to dispose of all of its assets. Under the Act of 1912 the sale could be made only to a Kentucky corporation within two years before the expiration of its charter upon the consent of three-fourths of its stockholders, but only to another corporation engaged in a similar business. In 1918, any corporation, whether domestic or foreign, was authorized to sell all of its assets to any other corporation, provided it obtained the consent of three-fourths of its stockholders. The restrictions relative to domestic corporations, the two-year limitation, and the sale to a corporation engaged in similar business, were eliminated at that time. The controlling purpose remained the same, namely, the authorization for a corporation to sell all of its assets.

Of course the courts should not resort to legislative history for the purpose of construing a statute where there could be no question as to the intent of the legislature, but where the literal meaning of a statute makes it a substantial departure from the long-established legislative policy on the subject, known to the court, the doubt thereby arising as to the legislative intent requires an examination of available information bearing on the purpose desired to be accomplished by the legislation in question. It would be going far afield from the original purpose of the legislature, now reflected in KRS 271.320, to say a corporation could not sell any of its property without first obtaining the consent of three-fourths of its stockholders. The history of the authorization in question reveals the true intent or purpose of the legislature.

The following quotation from the opinion of the chancellor is pertinent to the point under consideration:

"* * * When the purpose of the statute has been ascertained it should shed considerable light upon the proper construction. In seeking this purpose we have the right to refer to the manifest purpose of Chapter 15 of the Acts of 1918, which constituted

Sections 883b-1, 883b-2 and 883b-3 of the Kentucky Statutes and which was designed to prevent a corporation from selling all of its property or liquidating its affairs without the consent of the owners of three-fourths of its capital stock. Sometimes one corporation might obtain control of a majority of the stock or of the Board of Directors of another corporation and might make a contract with such corporation to purchase all of its assets for an amount less than their actual value. It was to prevent this that the Statute was enacted, and so the Statute provided that if corporation should sell all of its assets, then not only should the consent of the owners of three-fourths of the capital stock be obtained but any dissenting stockholder would be entitled to receive the market value of his stock which should not be less than its book value, and this being the manifest purpose of the Act of 1918, which was amended and revised by KRS 271.320, the revised section should not be so construed as to fail to carry out the manifest intention of the Legislature. * * *"

"If we give to this section the meaning which the words import it will be ambiguous because it conflicts with a number of sections of the Statutes which give corporations the right to carry on their business, and buy and sell property in the ordinary conduct of business. It would be in conflict with KRS 271.080 which prohibits corporations from holding property for more than five years, and providing that after two years notice, in which time the corporation may sell its property not in use by it, an action may be brought by the Commonwealth to escheat it; in conflict with KRS 272.110 giving co-operative corporations the right to sell real estate; and in conflict with KRS 287.100, 289.270 and 291.140, and possibly many others."

There is a further reason why we deem the judgment of the chancellor correct in holding that the word "all" should be substituted for the word "any" in KRS 271.320 in order to give a proper effect to the legislative intent. It is never to be presumed that the legislature intended to enact an absurd statute, though courts must ever be cautious not to substitute their opinion for that of a legislature as to the intent of an enactment. Fidelity & Columbia Trust Company, Trustee, v. Meek,

supra. No one could insist seriously that the wording in the Statute in question, as it now stands, would constitute other than an absurdity. The following quotation from the opinion of the chancellor on this point is pertinent:

"Defendant's counsel points out very clearly that the word 'any' in KRS 271.320 instead of the word 'all' was such a mistake as leads to absurdity and that the courts must always construe statutes so as to prevent absurdities.

"If KRS 271.320 is construed to mean strictly what it says * * * that is, a corporation may sell any of its property, but in order to do so it must obtain the consent of the owners of three-fourths of its capital stock, then this construction leads to an absolute absurdity, and such a construction would make the statute unjust, oppressive, unreasonable and contrary to the public interest. If such a construction were adopted the defendant would be unable to sell any obsolete or worn out piece of machinery without obtaining the consent of the owners of three-fourths of its capital stock. It would often cost more to obtain the consent of the owners of three-fourths of the capital stock than the sale of the property would bring."

In Crawford on Statutory Construction, pp. 288, 289 and 290, it is said:

"As a result, the court should strive to avoid a construction which will tend to make the statute unjust, oppressive, unreasonable, absurd, mischievous, or contrary to public interest. That construction should be accepted which will make the statute effective and productive of the most good, as it is presumed that these results were intended by the legislature. In order to carry out the legislative intent, it is therefore apparent that the statute should be given a rational, logical, and sensible interpretation. Any construction should be avoided, if possible, as contrary to the intent of the law-makers, that produces any effect at a variance with the commonly recognized concepts of what is right, just and ethical."

It is our view that the chancellor correctly adjudged that the word "all" should be substituted for the word "any" in KRS 271.320, in order to carry out the pur-

pose intended by the legislature. A corporation may sell a reasonable amount of its property in the usual course of its business without the consent of the owners of three-fourths of its capital stock, but may not sell all of its property without obtaining such consent. The Southeastern may sell the aforementioned real estate in Birmingham without obtaining the consent of three-fourths of the owners of its capital stock.

Judgment affirmed.

Whole Court sitting.