The TRAVELERS INDEMNITY COMPANY, Appellant,

v.

Deborah L. REKER, Appellee.

No. 2000–SC–0846–DG.

Supreme Court of Kentucky.

Jan. 23, 2003.

Rehearing Denied April 24, 2003.

Robert David Clark, Licha H. Farah, Jr., Clark, Ward & Cave, Lexington, Counsel for Appellant.

Larry Hicks, Sutton, Hicks, Lucas, Grayson & Braden, Edgewood, Counsel for Appellee.

H. Edward O'Daniel, Jr., Springfield, Phillip J. Shepherd, Frankfort, Counsel for Amici Curiae Kentucky Chamber of Commerce; American Insurance Association; Associated Builders & Contractors of Kentuckiana, Inc.; Western Kentucky Construction Association, Inc.; and Ky. Association of Plumbing, Heating and Cooling Contractors, Inc.

H. Douglas Jones, Kenneth Dietz, H. Douglas Jones & Assoc. PLLC, Florence, Counsel for Amicus Curiae Aik Comp.

Robert E. Stopher, Robert D. Bobrow, Boehl, Stopher & Graves, Louisville, Counsel for Amici Curiae General Motors Corporation; and Peabody Coal Company.

COOPER, Justice.

Appellant, The Travelers Indemnity Company ("Travelers"), is the workers' compensation insurance carrier for Appellee Deborah L. Reker's employer, Amick & Kreider Associates, Inc. Reker filed a workers' compensation claim for injuries that she sustained on May 18, 1987. On November 21, 1997, an administrative law judge (ALJ) found that the injuries were work-related and that she had sustained a 50% permanent partial disability as a result. She was awarded benefits accordingly. The employer and Travelers appealed and the award was affirmed by the Workers' Compensation Board on May 22, 1998. Meanwhile, in March 1998, Reker filed a motion to reopen her claim, KRS 342.125, seeking additional payments of $353.38 in unpaid medical and prescription bills and payment of a $468.78 motel bill. Reker's entire workers' compensation claim was ultimately settled in June 2000 for a lump sum payment of $125,000.00. The settlement agreement recites that the dispute as to medical expenses was submitted to an arbitrator and resolved in September 1999.

On June 8, 1998, Reker filed this civil action in the Boone Circuit Court seeking payment of the then-unpaid medical expenses and motel bill, totaling $822.16, that were the subject of the March 1998 motion to reopen her claim. She also sought compensatory damages for "worry and anguish" and "embarrassment" endured as a result of being dunned by medical providers for payment of the unpaid bills and as a result of Travelers' alleged "bad faith" refusal to settle her workers' compensation claim. Although Reker characterizes both Travelers' defense of her claim and its appeal to the Workers' Compensation Board as frivolous and in bad faith, the

injuries that Reker sustained resulted from an off-premises assault at a highway rest area. Thus, the success of her claim depended upon whether the so-called "positional risk doctrine" applied, *Corken v. Corken Steel Prods., Inc.*, Ky., 385 S.W.2d 949, 950 (1964), and upon whether the assailant's motivation for the assault arose from a nonwork-related personal animosity. *Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 175 (2000). The settlement agreement executed by both Reker and her attorney recites:

> This continues to be a case of contested and disputed liability on issues of work relationship and causation and existence of continuing medical treatment needs arising from the subject accident. These agreements represent a compromised settlement of all potential claims and defenses between the parties.

The Boone Circuit Court entered a summary judgment in favor of Travelers premised upon the "exclusive remedy" provision of the Workers' Compensation Act, KRS 342.690(1), and our decision in *Zurich Insurance Co. v. Mitchell*, Ky., 712 S.W.2d 340 (1986). The Court of Appeals reversed, concluding that KRS 342.267, when read together with KRS 304.12–230, the Unfair Claims Settlement Practices Act ("UCSPA"), and KRS 446.070, creates an exception to KRS 342.690(1). We disagree. Applying established principles of statutory construction and considering legislative intent, which is obvious from the legislative history, we conclude that KRS 342.267 does not and was never intended to create an exception to KRS 342.690(1).

### I. KRS 342.690(1).

The first sentence of KRS 342.690(1) provides:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

The fourth sentence of the statute extends the same "exclusive remedy" shield to the employer's workers' compensation insurance carrier.

> *The exemption from liability given an employer by this section shall also extend to such employer's carrier, and to all employees, officers, or directors of such employer or carrier, provided the exemption from liability given an employee, officer or director of an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.* [Emphasis added.]

In *Zurich Insurance Co. v. Mitchell, supra*, we held that these provisions preclude a civil action against a workers' compensation insurer for an alleged "bad faith" refusal to settle a claim. *Id.* at 344. (Reker does not assert that her assailant was an employee, officer or director of Travelers.)

The "exclusive remedy" provision has been a part of the Workers' Compensation Act since its enactment in 1916. K.S. § 4882 (1916 Ky. Acts, ch. 33, § 3, repealed KRS 447.025, 1942 Ky. Acts, ch. 208, § 20); *replaced by* KRS 342.015(1) (1942 Ky. Acts, ch. 208, §§ 1, 2, repealed 1972 Ky. Acts, ch. 77, § 36, eff. January 1, 1973); *replaced by* KRS 342.690(1) (1972 Ky. Acts, ch. 78, § 9, eff. January 1, 1973). In addition, KRS 342.395(3) provides that until and unless an employee files a written notice of rejection of the Act, *i.e.*, "opts out," "the measure of liability of the em-

ployer shall be determined according to the compensation provisions of this chapter."

■ It is elementary that "[w]orkers' compensation is a creature of statute, and the *remedies and procedures described therein are exclusive.*" *Williams v. Eastern Coal Corp.*, Ky., 952 S.W.2d 696, 698 (1997) (emphasis added); *see also Morrison v. Carbide and Carbon Chemicals Corp.*, 278 Ky. 746, 129 S.W.2d 547, 549 (1939). We have consistently held that, except for the clause pertaining to a "willful or unprovoked physical aggression" at the hands of the employer or insurer or their agents, KRS 342.690(1) and its predecessor statutes shield a covered employer and its insurer from any other liability to a covered employee for damages arising out of a work-related injury. *E.g.*, *Shamrock Coal Co., Inc. v. Maricle*, Ky., 5 S.W.3d 130, 133, 134–35 (1999) (workers' compensation board has exclusive jurisdiction to adjudicate work-related injuries not caused by intentional physical aggression); *Zurich Ins. Co. v. Mitchell, supra,* at 342 ("With the exception of failing to secure the payment of benefits as provided in KRS 342.690(2) or a willful and unprovoked physical aggression, the exclusive liability provisions of the act cannot be waived."). *See also Duke v. Brown Hotel Co.*, Ky., 481 S.W.2d 289, 292 (1972); *Mahan v. Litton*, Ky., 321 S.W.2d 243, 245 (1959); *Commonwealth, Dept. of Hwys. v. Meyers*, Ky., 307 S.W.2d 179, 181 (1957); *Davis v. Solomon*, Ky., 276 S.W.2d 674, 676 (1955); *Standard Oil Co. v. Cheek*, 278 Ky. 508, 128 S.W.2d 950, 951 (1939); *Partin's Adm'r v. Black Mountain Corp.*, 237 Ky. 556, 36 S.W.2d 1, 2 (1931); *D.E. Hewitt Lumber Co. v. Brumfield*, 196 Ky. 723, 245 S.W. 858, 859 (1922); *cf. Roberts v. George W. Hill & Co.*, Ky., 23 S.W.3d 635, 636 (2000) (enactment of KRS 342.640 and repeal of KRS 342.170 reflect a legislative intent to eliminate any tort remedy for injuries sustained by an illegally employed minor).

In *Brown Badgett, Inc. v. Calloway*, Ky., 675 S.W.2d 389 (1984), we held that a circuit court has no jurisdiction to resolve a dispute over an unpaid medical bill; the Workers' Compensation Board has exclusive jurisdiction. *Id.* at 390–91. In *Zurich Insurance Co. v. Mitchell, supra,* we held that KRS 342.690(1) precludes a covered employee from maintaining a civil action for damages against his employer's insurance carrier for failure to pay medical expenses under either a common law "bad faith" theory, *see Curry v. Fireman's Fund Ins. Co.*, Ky., 784 S.W.2d 176 (1989), or under the "tort of outrage" theory, *see Craft v. Rice*, Ky., 671 S.W.2d 247 (1984). 712 S.W.2d at 344. *See also Coker v. Daniel Const. Co.*, 664 F.Supp. 1079 (W.D.Ky.1987), *aff'd,* 848 F.2d 189 (6th Cir.1988) (noting that the employer's delay in payment of medical bills did not give rise to a claim of bad faith or outrageous conduct under Kentucky law). Finally, in *General Accident Insurance Co. v. Blank*, Ky.App., 873 S.W.2d 580 (1993), the Court of Appeals, following *Mitchell,* held that neither the Consumer Protection Act, KRS 367.170 and 367.220, nor the UCSPA, KRS 304.12–230, were available as vehicles for bringing a civil action against a workers' compensation insurer. 873 S.W.2d at 582.

## II. KRS 342.267.

Reker asserts and the Court of Appeals agreed that the 1996 enactment of KRS 342.267 authorized a civil cause of action against a workers' compensation insurer for an alleged unfair claims settlement practice and, thus, abrogated the holdings in *Mitchell* and *Blank, supra.* In fact, KRS 342.267 is completely silent on that issue, *viz:*

If an insurance carrier, self-insurance group, or self-insured employer providing workers' compensation coverage engages in claims settlement practices in violation of this chapter, or the provisions of KRS 304.12–230, the commissioner of the Department of Workers' Claims shall fine the insurance company, self-insurance group, or self-insured employer the sum of one thousand dollars ($1,000) to five thousand dollars ($5,000) for each violation and if they have a pattern of violations, the commissioner may revoke the certificate of self-insurance or request the commissioner of insurance to revoke the certificate of authority of the insurance carrier.

The General Assembly knows how to authorize private civil actions for violations of the Workers' Compensation Act. It has done so by clear and unambiguous language in three separate statutes. KRS 342.690(2) authorizes an injured worker to "maintain an action at law or admiralty" for damages against an employer who has failed to secure payment of compensation as required by KRS 342.340. KRS 342.197(3) authorizes a civil action for damages against an employer who has discriminated against an employee for filing and pursuing a lawful workers' compensation claim or because the employee suffers from early stage pneumoconiosis, *viz:*

Any individual injured by any act in violation of the provisions of subsection (1) or (2) of this section shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record.

KRS 342.035(2) prohibits a medical provider from attempting to collect directly from the injured worker any charge for treatment of a work-related injury or occupational disease, and:

In addition to the penalty imposed in KRS 342.990 for violations of this subsection, any individual who sustains damages by any act in violation of the provisions of this subsection shall have a civil cause of action in Circuit Court to enjoin further violations and to recover the actual damages sustained by the individual, together with the costs of the lawsuit, including a reasonable attorney's fee.

This statutory remedy is interrelated to KRS 342.020(1), which requires the insurance carrier to pay the medical bills directly to the provider within certain specified time periods, subject to penalties set forth in KRS 342.990(7)(b). Thus, any dispute over the payment of a medical bill is between the provider and the carrier, not the provider and the patient. If Reker has a claim for "worry and anguish" and "embarrassment" because she was dunned by her medical providers, her cause of action is against those providers, not Travelers, and KRS 342.035(2) specifically authorizes such an action.

■ Note that none of these three statutes creates an exception to the exclusive remedy provision of KRS 342.690(1). KRS 342.690(2) authorizes a civil cause of action against an employer who *has not* "secure[d] ... payment of compensation" by either procuring insurance coverage or qualifying as a self-insured pursuant to KRS 342.340(1), whereas KRS 342.690(1) shields only an employer who *has* "secure[d] payment of compensation." KRS 342.197(3) authorizes a civil cause of action because of discrimination, not because of a work-related accident or occupational disease. KRS 342.035(2) authorizes a civil cause of action by the employee against a medical provider, not against the employer or insurer.

No provision similar to those authorizing separate civil actions in KRS 342.690(2), KRS 342.197(3), and KRS 342.035(2), *supra,* is included in KRS 342.267, presumably because the statutory scheme of the Workers' Compensation Act contains other interrelated provisions that provide civil remedies for an employee who is injured by an employer's "bad faith" refusal to settle or to make payments when due. KRS 342.040(1) permits assessment of interest at the rate of 18% if the ALJ finds that a *"denial, delay,* or termination in the payment of income benefits was without reasonable foundation." (Emphasis added.) KRS 342.310(1) provides for the assessment of the "whole cost" of any proceedings, including but not limited to, "court costs, travel expenses, deposition costs, physician expenses for attendance fees at depositions, attorney fees, and all other out-of-pocket expenses" against a party determined to have "brought, prosecuted, or *defended* [such proceedings] *without reasonable ground.*" (Emphasis added.) Reker does not claim to have resorted to any of these administrative remedies. Finally, if, as here, a worker believes that an appeal from an award was frivolous or was taken for the purpose of delay, KRS 342.300 authorizes a motion for a continuation of payments under the award during the pendency of the appeal. Reker also does not claim to have sought relief under this statutory remedy.

In summary, KRS 342.267 does not facially authorize a civil action for a bad faith refusal to settle, or for a delay in payment of benefits, or for failing, *sua sponte,* to pay benefits during the pendency of an appeal. It only authorizes, in addition to the remedies available to the worker under KRS 342.040, KRS 342.300, and 342.310(1), *supra,* punitive action against the insurer or self-insurer by the commissioner of the Department of Workers' Claims.

### III. KRS 446.070.

Realizing that the language of KRS 342.267 does not, itself, authorize a civil cause of action for a "bad faith" refusal to settle a workers' compensation claim, Reker asserts and the Court of Appeals agreed that the cause of action is authorized by KRS 446.070. That statute provides:

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

In *State Farm Mutual Automobile Insurance Co. v. Reeder,* Ky., 763 S.W.2d 116 (1988), we held that KRS 446.070 authorizes a private cause of action for a violation of the UCSPA, KRS 304.12–230, even though the UCSPA, like KRS 342.267, "does not specifically provide that any individual may maintain a claim for damages for violation of the act," 763 S.W.2d at 117, and "because [the UCSPA] does not provide the aggrieved party with a civil remedy." *Id.* at 118. The first quotation from *Reeder* clarifies that it is not KRS 304.12–230, but KRS 446.070, that authorizes a private civil action for damages caused by a violation of the UCSPA. The second quotation from *Reeder* refers to the fact that KRS 446.070 does not authorize a private cause of action for the violation of a statute if the statute, itself, specifies a civil remedy available to the aggrieved party. *Grzyb v. Evans,* Ky., 700 S.W.2d 399, 401 (1985).

Here, although a civil remedy for a "bad faith" refusal to settle is not specified within the confines of KRS 342.267, it is specified in those interrelated provisions of the Workers' Compensation Act discussed *supra, i.e.,* KRS 342.040, KRS 342.300, and 342.310(1). The UCSPA, which was being interpreted in *Reeder, supra,* is a part of the Kentucky Insurance Code, a statutory

scheme that did not include interrelated statutes providing civil remedies for "bad faith" on the part of an insurer. The Insurance Code also does not include an "exclusive remedy" provision prohibiting private causes of action for its violation. KRS 342.267 is part of a statutory scheme that includes not only interrelated provisions providing civil remedies for an insurer's "bad faith" but also a separate provision, KRS 342.690(1), specifically prohibiting private civil actions for its violation.

> Workers' compensation insurance is different from other forms of liability insurance. The KUCSPA is part of the Insurance Code, whereas the Workers' Compensation Act is part of the labor and human rights statutes.

*Farmland Mut. Ins. Co. v. Johnson,* Ky., 36 S.W.3d 368, 380 (2000).

The Court of Appeals' opinion asserts that "we can reasonably assume that the legislature was aware of KRS 446.070 when it enacted KRS 342.267." No doubt; but we can also reasonably assume that the legislature was equally aware of both KRS 342.690(1) and *Simmons v. Clark Construction Co.,* Ky., 426 S.W.2d 930 (1968), which holds that KRS 446.070 has no application to cases falling within the purview of the Workers' Compensation Act. *Id.* at 932–33. In so holding, *Simmons* specifically relied on KRS 342.015(1), the predecessor of KRS 342.690(1). *Id.* at 932. That holding is in accord with two elementary principles of statutory construction.

■ First, if two statutes are irreconcilable, the later enactment prevails. *Butcher v. Adams,* 310 Ky. 205, 220 S.W.2d 398, 400 (1949). That rule applies in the workers' compensation context. *Sumpter v. Burchett,* 304 Ky. 858, 202 S.W.2d 735, 737 (1947). Whereas KRS 446.070 authorizes a civil action for the violation of a statute, KRS 342.690(1) pro-

hibits a civil action for the violation of a workers' compensation statute. Thus, as applied to this case, the statutes are irreconcilable and the later enactment prevails. KRS 446.070 (formerly K.S. 466), was enacted in 1892. 1892 Ky. Acts, ch. 107, § 21. KRS 342.690(1) (formerly K.S. 4882), was first enacted in 1916. 1916 Ky. Acts, ch. 33, § 3. Thus, KRS 342.690(1) prevails.

■ Second, when two statutes are in conflict, one of which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails. *E.g., Commonwealth v. Phon,* Ky., 17 S.W.3d 106, 107–08 (2000) (KRS 446.110, which permits retroactive application of a mitigating statute by the consent of the party affected, prevails over KRS 446.080(3), which prohibits retroactive application of a statute unless the statute expressly so declares.); *DeStock # 14, Inc. v. Logsdon,* Ky., 993 S.W.2d 952, 959 (1999) (KRS 413.241, which specifically addresses tort actions against dram shops, prevails over KRS 411.182, which addresses tort actions in general). Thus, KRS 342.690(1), which specifically addresses remedies for violations of workers' compensation statutes, prevails over KRS 446.070, which addresses remedies available for violations of statutes in general.

## IV. LEGISLATIVE INTENT.

■ "The seminal duty of a court in construing a statute is to effectuate the intent of the legislature." *Commonwealth v. Plowman,* Ky., 86 S.W.3d 47, 49 (2002). "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Kentucky Ins. Guar. Ass'n v. Jeffers,* Ky., 13 S.W.3d 606, 610 (2000). *See also* KRS 446.080(1). As previously noted, KRS 342.267 is completely silent on the subject of whether a civil cause of action may be brought by one

injured by its violation, *i.e.*, whether its enactment was intended to create an exception to KRS 342.690(1). In the face of statutory silence with respect to legislative intent, "we look for guidance to outside sources, such as legislative history." *White v. Check Holders, Inc.*, Ky., 996 S.W.2d 496, 497 (1999). Thus, in *Roberts v. George W. Hill & Co.*, *supra*, we rejected a claim that a minor illegally employed in violation of KRS 339.320(2) could bring an action for damages for a work-related injury, discerning from the concomitant repeal of KRS 342.170 and enactment of KRS 342.640(1) that "the legislature specifically rejected the alternative of tort liability and embraced worker's compensation coverage for minors, even if illegally employed." 23 S.W.3d at 636.

Though confronted here with complete statutory silence (if we disregard KRS 342.690(1)), we are not confined to mere conjecture in determining whether the legislature intended to authorize a private civil action for damages for a violation of KRS 342.267; for here, as in *Roberts, supra*, "the legislature specifically rejected the alternative of tort liability." *Id.* at 636. Our only task is to recognize and give effect to that specific rejection.

KRS 342.267 was enacted on December 12, 1996. 1996 Ky. Acts (1st Ex.Sess.), ch. 1, § 80, eff. December 12, 1996. The legislation was introduced as House Bill 1, section 80, and never included a provision authorizing a private civil action in tort for its violation. However, on December 11, 1996, floor amendment number 5 to section 80 was introduced on the Senate floor. That amendment would have added the following language as a proposed subsection (2) of the statute:

> An employee shall retain the right to bring a cause of action against a workers' compensation insurer, self-insured, or group self-insured for the violation of any of the acts or omissions set forth in subsection (1) of this section.

1996 Ky. Senate Journ. (1st Ex.Sess.) 125.

On December 12, 1996, floor amendment number 5 was called to a vote and was initially *passed* by a vote of 20 to 17. *Id.* at 197. Later that same day, the Senate voted to reconsider its vote on the amendment. *Id.* at 198. A new vote was taken and floor amendment number 5 was *defeated* by a vote of 21 to 17. *Id.* In view of this legislative history, it is not even arguable that the Senate did not intend by its second vote to reject a proposed amendment to KRS 342.267 that would have accomplished by specific provision what Reker would have us hold was accomplished by implication.

If the 1996 defeat of floor amendment number 5 were not proof enough of a legislative intent *not* to authorize a private right of recovery by an employee for a violation of KRS 342.267, the 2000 General Assembly rejected two more proposed amendments of KRS 342.267 that were intended to accomplish that result. Section 6 of House Bill 992 would have provided for the imposition of penalties for its violation payable directly to the employee. 2000 Ky. House Journ. 2584, 2591–92. Although House Bill 992 initially passed the House of Representatives with section 6 intact, that section was deleted from the Senate Committee Substitute, 2000 Ky. Senate Journ. 3204–28, 3215, that was ultimately adopted by the full Senate. *Id.* at 3251. The bill was then referred to a free conference committee and subsequently reported back to the House and Senate with section 6 still deleted. Both houses then passed the bill with section 6 deleted. 2000 Ky. House Journ. 5321–24; 2000 Ky. Senate Journ. 3540. During that same 2000 session of the General Assembly, the House Labor and Industry Committee reported House Bill 188 (Committee Substi-

tute) to the House floor, which would have amended KRS 342.267 to provide that "the injured worker may also recover in the Circuit Court all other damages at law sustained by the worker." 2000 Ky. House Journ. 357–58. That bill was subsequently recommitted to the Appropriations and Revenue Committee, *id.* at 1479, from which it did not re-emerge. What better proof could there be of a legislative intent *not* to authorize a private recovery in damages by an employee for a violation of KRS 342.267 than the fact that the General Assembly has thrice considered and rejected amendments of KRS 342.267 that would have accomplished that exact purpose?

Reker urges us to ignore this incontrovertible evidence of legislative intent and declare the *language* of KRS 342.267 to be "clear and unambiguous" in authorizing a tort action for its violation, thus obviating any requirement to apply rules of statutory construction or to examine legislative history. In other words, even though we *know* from the legislative history of KRS 342.267 that the legislature did not intend to authorize a private cause of action for its violation, Reker claims we are precluded from considering that legislative history because the words used in the statute clearly and unambiguously provide otherwise. *Griffin v. City of Bowling Green,* Ky., 458 S.W.2d 456, 457 (1970) ("Where the words used in a statute are clear and unambiguous *and express the legislative intent,* there is no room for construction and the statute must be accepted as written.") (emphasis added). We, however, are unable to conclude that a statute that is completely silent on the subject at issue constitutes a clear and unambiguous expression of a legislative intent that the subject at issue exists.

 In fact, the applicable rule of construction with respect to matters not expressed in a statute is that "a court must refer to 'the words used in enacting the statute rather than surmising what may have been intended but was not expressed.'" *Hale v. Combs,* Ky., 30 S.W.3d 146, 151 (2000) (*quoting Commonwealth v. Allen,* Ky., 980 S.W.2d 278, 280 (1998)). Further, "[w]here a statute is intelligible on its face, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus,* or cure an omission." *Commonwealth v. Harrelson,* Ky., 14 S.W.3d 541, 546 (2000). Under that elementary rule of construction, even if the legislative intent were not obvious from the legislative history, we simply "are not at liberty" to add language to cure a perceived omission. The words used in this statute authorize only the imposition of an administrative penalty, not a private cause of action, for its violation.

 Reker's claim that the language of KRS 342.267 clearly and unambiguously expresses a legislative intent to create a cause of action in tort for its violation is premised upon the reference in the statute to the UCSPA, KRS 304.12–230. However, that reference to KRS 304.12–230, when read in context, obviously was intended only to define what constitutes a violation of KRS 342.267, not to authorize a private civil action for such violation. Remember, KRS 304.12–230, itself, does not authorize a private civil action for its violation. The only authority for a cause of action premised upon a violation of the UCSPA is KRS 446.070 which we have previously held does not apply to violations of the Workers' Compensation Act. *Simmons v. Clark Const. Co., supra.* Nevertheless, at the same 1996 legislative session at which KRS 342.267 was enacted and Senate floor amendment number 5 thereto rejected, floor amendment number 6 to House Bill 1

(Committee Substitute) was also introduced on the floor of the House of Representatives. That amendment would have added a new subsection (4) to KRS 342.690 to provide as follows:

> An employee shall retain the right to bring a cause of action pursuant to KRS 304.12–230 against a workers' compensation insurer or individual and group workers' compensation self-insurers.

The amendment was introduced on December 5, 1996, 1996 Ky. House Journ. (1st Ex.Sess.) 204, and voted down the next day. *Id.* at 226. The defeat of this proposed amendment, which would have specifically applied the "cause of action pursuant to KRS 304.12–230" to a violation of a workers' compensation statute, clearly indicates that the reference to KRS 304.12–230 in KRS 342.267 was not intended to authorize a private cause of action against a workers' compensation insurer for a violation of either statute.

Finally, even if the literal language of KRS 342.267 did suggest an intent to depart from the "exclusive remedy" provision in KRS 342.690(1), such would *require,* not obviate, an inquiry into the legislative history.

> Of course, the courts should not resort to legislative history for the purpose of construing a statute where there could be no question as to the intent of the legislature, but where the literal meaning of a statute makes it a substantial departure from the long-established legislative policy on the subject, known to the court, the doubt thereby arising as to the legislative intent requires an examination of available information bearing on the purpose desired to be accomplished by the legislation in question.

*Swift v. Southeastern Greyhound Lines,* 294 Ky. 137, 171 S.W.2d 49, 51 (1943).

If, indeed, "[w]orkers' compensation is a creature of statute," *Williams v. Eastern Coal Corp.,* 952 S.W.2d at 698, to enact by judicial fiat a statute that has been rejected four times by the General Assembly would seriously implicate Section 28 of our Constitution ("No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others ....").
It would also emasculate the long-standing legislative public policy embodied in KRS 342.190(1), disregard a clearly expressed legislative intent to the contrary, and violate every rule of statutory construction applicable to the facts of this case. We decline the invitation to do so and hold, instead, that neither KRS 342.267 nor KRS 446.070 authorizes a private cause of action against a workers' compensation insurer for an alleged unfair claims settlement practice.

Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Boone Circuit Court.

JOHNSTONE and KELLER, JJ., concur.

LAMBERT, C.J., concurs except as to Part IV, which he believes to be an unnecessary analysis.

STUMBO, J., dissents by separate opinion, which GRAVES and WINTERSHEIMER, JJ., join.

STUMBO, Justice, dissenting.

The Court of Appeals below held that, by virtue of KRS 446.070, an individual injured by a violation of KRS 342.267 may pursue a civil action in circuit court for damages. Since I find no error in the judgment rendered by the Court of Appeals, I disagree with the opinion of the majority.

KRS 342.267 is a provision of the Workers' Compensation Act that sets forth pen-

alties for unfair claims settlement practices. It provides:

> If an insurance carrier, self-insurance group, or self-insured employer providing workers' compensation coverage engages in claims settlement practices in violation of this chapter, or the provisions of KRS 304.12–230, the commissioner of the Department of Workers' Claims shall fine the insurance company, self-insurance group, or self-insured employer the sum of one thousand dollars ($ 1,000) to five thousand dollars ($ 5,000) for each violation and if they have a pattern of violations, the commissioner may revoke the certificate of self-insurance or request the commissioner of insurance to revoke the certificate of authority of the insurance carrier.

The Unfair Claims Settlement Practices Act ("UCSPA"), KRS 304.12–230, a provision of the Insurance Code, is specifically referenced by KRS 342.267. Subsection six of the UCSPA provides that it is an unfair claims settlement practice for one to not attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

KRS 446.070 provides that a penalty assessed for violation of a statute is no bar to recovery in a civil action. It states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

KRS 446.070 has been a part of Kentucky's statutory law for over a hundred years. It can reasonably be inferred that the General Assembly was aware of this provision when it enacted KRS 342.267. It necessarily follows that the General Assembly must have been aware KRS 446.070 would be applicable to KRS 342.267, since it incorporates the UCSPA.

As noted, KRS 342.267 reveals that it provides a penalty. The Commissioner of the Department of Workers' Claims can impose a fine upon any workers' compensation insurance carrier that engages in claims settlement practices in violation of the UCSPA. This statute alone provides an individual with a mechanism to penalize a workers' compensation carrier for not acting in good faith in claims settlement, but no remedy is specifically provided.

The majority takes the position that the General Assembly did not intend to allow a civil remedy because proposed amendments to KRS 342.267, which would have specifically provided such a remedy, were defeated. I do not find this to be a declaration of the General Assembly's intent. "Where the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as it is written." *Griffin v. City of Bowling Green*, Ky., 458 S.W.2d 456, 457 (1970). I find that the language in KRS 342.267 is clear and unambiguous when incorporating the UCSPA. The UCSPA does not provide for a civil remedy; therefore, KRS 446.070 is applicable to the UCSPA and to KRS 342.267. While claims under the Workers' Compensation Act are generally exclusive to the provisions therein, I would conclude that KRS 342.267 is an exception to that general proposition because of the inclusion of the UCSPA. Thus, I would hold that a party is entitled, under KRS 342.267, to maintain a civil action in circuit court for damages by and through KRS 446.070.

It is argued by the appellant, Travelers, that the Workers' Compensation Act under KRS 342.690 makes all remedies arising out of work-related injuries exclusive to the remedies and procedures proscribed thereunder. I agree that any claims related to an injury that occurred within the

scope of employment are "exclusive" to the Workers' Compensation Act. However, the issue in this case is not whether an injured worker is entitled to compensation for a work-related injury. Rather, the issue concerns a workers' compensation insurance carrier's lack of good faith dealing in settlement negotiations.

Travelers cites to a number of prior decisions from both this Court and the Court of Appeals, which purportedly hold that injured workers, who elect to be covered by workers' compensation, are limited to only those remedies provided in the Workers' Compensation Act, and as a consequence, are not entitled to maintain a civil action in circuit court.

Travelers relies on *Zurich Insurance Co. v. Mitchell*, Ky., 712 S.W.2d 340 (1986), where an injured employee alleged two separate causes in tort, outrageous conduct causing emotional distress and bad faith refusal to pay benefits. *Id.* at 341. This Court held that KRS 342.090 of the Workers' Compensation Act provided an exclusive remedy and consequently barred an injured employee's action in tort for separate damages due to the untimely payment of workers' compensation benefits. *Id.* Travelers asserts that *Mitchell* effectively bars any tort action brought by an employee regarding a work-related injury and is directly on point with the present case. While *Mitchell* is on point, KRS 342.267 was enacted after the decision in that case was rendered. As the Court of Appeals noted in *General Accident Insurance Co. v. Blank*, Ky.App., 873 S.W.2d 580, 582 (1993), the General Assembly would need to act in order for the UCSPA to apply in workers' compensation actions. I believe that the General Assembly did so act when KRS 342.267 was enacted. Accordingly, I would overrule both *Mitchell* and *Blank* to the extent that they conflict with the views herein.

Travelers also cites to *Simmons v. Clark Construction Co.*, Ky., 426 S.W.2d 930 (1968), for the proposition that KRS 446.070 does not apply to the Workers' Compensation Act. However, the *Simmons* opinion predates the enactment of KRS 342.267. *Simmons* cannot properly be compared to the instant case, and thus, I do not find it dispositive of any issue of concern at present.

Finally, I fail to see how the public policy underlying the existence of the workers' compensation system would be jeopardized if the Court of Appeals' judgment was affirmed. The instant matter concerns only KRS 342.267, not the entire Workers' Compensation Act. Contrary to the opinion of the majority, upholding the decision of the Court of Appeals would not "emasculate" the long-standing legislative public policy embodied within this state's system of workers' compensation. The enactment of KRS 342.267 simply recognized the need for workers' compensation carriers to act promptly, and in good faith, where the claim of an injured worker, perhaps the sole support of a family, was concerned.

For the foregoing reasons, I would affirm the judgment of the Court of Appeals.

GRAVES and WINTERSHEIMER, JJ., join this dissent.