NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0092n.06
Filed: November 16, 2004

No. 03-5756
(Consolidated with No. 03-5585)

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| REBECCA SON, as Liquidating Agent of the Estates of Centennial Coal, Inc., Centennial Resources, Inc., CR Mining Company, and B-Four, Inc. | ) ) ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| COAL EQUITY, INC., | ) | OPINION |
| Defendant-Appellant, | ) ) ) | |
| LOUISVILLE GAS & ELECTRICAL COMPANY, | ) ) ) | |
| Defendant-Appellee. | ) ) | |

**Before: MERRITT, MOORE, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Centennial Resources, Inc. (CRI) was unable

to fulfill its contractual obligation to supply coal to Louisville Gas and Electric Company (LG&E)

due to an alleged *force majeure* event. Coal Equity, Inc. was the coal merchant in the middle that

held contracts with both CRI and LG&E. After LG&E withheld payment on coal previously

delivered and rejected a substitute contractor for future deliveries, CRI sued both Coal Equity and

-1-

LG&E for breach of contract and, alternatively, for *quantum meruit*. Coal Equity in turn filed a cross-claim against LG&E for indemnity.

The district court concluded that CRI's breach-of-contract claim against LG&E was time-barred under the Uniform Commercial Code's four-year statute of limitations. It also dismissed CRI's *quantum meruit* claim and Coal Equity's claim for indemnity. For the reasons set forth below, we **AFFIRM** the dismissal of Coal Equity's indemnity claim, **REVERSE** the rulings on the statute of limitations issue and the dismissal of CRI's *quantum meruit* claim, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual background

At issue in this case is CRI's attempt to collect upon an unpaid invoice for coal. CRI, a company engaged in the mining, marketing, and sale of bituminous coal in western Kentucky, entered into a contract with Coal Equity in December of 1995 (hereafter referred to as the Coal Equity contract). Coal Equity is a merchant of coal that acts principally as a middleman between buyers and sellers. Also in December of 1995, Coal Equity entered into a contract with LG&E (hereafter referred to as the LG&E contract). The contracts provided that LG&E would buy all of the coal that Coal Equity purchased from CRI and that CRI would deliver the coal directly to LG&E.

Between March 29, 1997 and April 24, 1997, CRI delivered coal to LG&E, which LG&E accepted and burned. In a letter dated April 17, 1997, however, CRI notified Coal Equity that it was invoking the *force majeure* clause in the Coal Equity contract as to future delivery obligations. The

letter explained that severe flooding in March of 1997, in addition to other production problems, had significantly impacted CRI's ability to ship coal to LG&E.

Coal Equity informed LG&E of CRI's *force majeure* declaration. In response, LG&E wrote a letter on April 29, 1997, asserting that Coal Equity had defaulted on the LG&E contract because of Coal Equity's inability to comply with the agreed-upon delivery schedule. LG&E rejected CRI's declaration that the flooding and other supply problems constituted *force majeure* events. Acknowledging receipt of Coal Equity's latest invoice, LG&E stated that payment would be withheld "until we have reached some sort of resolution to these matters."

CRI and Coal Equity then proposed alternate coal suppliers to LG&E. The parties tentatively agreed that Kindill Mining, Inc. would ship replacement coal to LG&E. Negotiations concerning Kindill, however, drug on from June of 1997 until June of 1998. LG&E informed Coal Equity at the end of this time frame that it had not decided whether it would accept a replacement contractor at all. A month later, LG&E declared that it would not accept Kindill as a replacement.

## B.     Procedural background

This litigation began when CRI filed for Chapter 11 bankruptcy in October of 1998. The bankruptcy court assigned the right to pursue the recovery of CRI's assets to the Official Committee of Unsecured Creditors. Pursuant to CRI's bankruptcy plan, Rebecca Son, the Liquidating Agent of CRI's estate, succeeded to that right. Son (hereafter referred to as CRI) sued Coal Equity on CRI's behalf in October of 2000 in the United States Bankruptcy Court for the District of Delaware to recover amounts allegedly owed under the Coal Equity contract. CRI filed an amended complaint

on April 17, 2002 that added LG&E as a codefendant. This was more than four years but less than five years after LG&E's April 29, 1997 letter declaring its intent to withhold payment.

In the amended complaint, CRI alleged that it was a third-party beneficiary of the LG&E contract with Coal Equity. CRI also asserted a *quantum meruit* claim against both defendants. Coal Equity responded by answering CRI's complaint and asserting a cross-claim against LG&E for indemnity in the event that Coal Equity was found liable to CRI.

LG&E filed a motion in the bankruptcy court to dismiss CRI's complaint and Coal Equity's cross-claim in May of 2002. A month later, LG&E filed a motion in the bankruptcy court to transfer venue to the United States District Court for the Western District of Kentucky, which the bankruptcy court granted. When the district court subsequently granted LG&E's motion to dismiss all claims against it, Coal Equity and CRI filed timely notices of appeal.

Coal Equity and CRI requested the district court to enter an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, certifying the April 2003 order as final and appealable. The district court entered an order to that effect in September of 2003.

## II. ANALYSIS

### A.    Standard of review

We review de novo a district court's grant of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Montgomery v. Huntington Bank*, 346 F.3d 693, 697-698 (6th Cir. 2003). When conducting such a review, we accept all of the evidence and

allegations presented in the light most favorable to the nonmoving party. *Gean v. Hattaway*, 330

F.3d 758, 765 (6th Cir. 2003).

**B.      Statute of limitations**

The primary issue on appeal is whether a four-year statute of limitations or a five-year statute

of limitations applies to CRI's claim against LG&E for breach of contract.  Kentucky's five-year

statute of limitations, advocated by CRI, provides that "[a]n action upon a merchant's account for

goods sold and delivered . . . shall be commenced within five (5) years after the cause of action

accrued." KRS § 413.120(10).  This statute was originally enacted in 1942, and has been

subsequently amended three times, most recently in 1998.  Under the UCC, on the other hand, "[a]n

action for breach of any contract for sale must be commenced within four (4) years after the cause

of action has accrued."  KRS § 355.2-725(1).  Kentucky adopted the UCC in 1958.

In granting LG&E's motion to dismiss, the district court held that the UCC's four-year

statute of limitations applied.  The district court reasoned that the purpose of the UCC was "to

introduce a uniform statute of limitations for sales contracts . . . [by] tak[ing] sales contracts out of

the general laws limiting the time for commencing contractual actions and select[ing] a four year

period as the most appropriate to a modern business practice." It concluded that the five-year statute

of limitations on merchants' accounts was in effect supplanted by the UCC, despite the lack of any

explicit repeal of the earlier statute.  On appeal, CRI reasserts its argument that the five-year statute

of limitations should apply, relying upon several principles of statutory construction to make its

case.

One elementary principle of statutory construction states that when two statutes conflict with one another and one of them "deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails." *Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky. 2003). Both of the statutes in question deal with actions arising from the sale of goods, but the five-year statute of limitations is the more specific of the two. Section 413.120 (the five-year statute) applies exclusively to actions "upon a merchant's account for goods sold and delivered," whereas § 355.2-725 (the four-year statute under the UCC) applies broadly to breaches of "*any* contract for sale." (Emphasis added.) The principle that the more specific statute governs when two statutes concerning the same subject matter are in conflict points to the application of the five-year statute of limitations in this case.

A second applicable rule of statutory construction provides that when "two statutes are irreconcilable, the later enactment prevails." *Reker,* 100 S.W.3d at 763. Recent amendments to the five-year statute of limitations (§ 413.120) suggest that it remains in force and is not a forgotten anachronism. The Kentucky legislature has amended § 413.120 three times—in 1964, 1988, and 1998. Conversely, since its enactment in 1958, § 355.2-735 (the UCC statute of limitations) has never been amended. CRI points out that the legislature could have repealed § 413.120, but instead chose to reenact it after Kentucky adopted the UCC. The logical inference to draw from this legislative history is that the Kentucky legislature intended for § 413.120 to remain in force for suits on merchant accounts.

Also weighing in favor of applying the five-year statute of limitations in the present case is the principle that "where two constructions concerning the limitation period are possible . . . courts

prefer the one that allows the longer period." 3A Norman J. Singer, *Sutherland Statutory Construction*, § 72:3) (6th ed. 2000); *see also Troxell v. Trammell*, 730 S.W.2d 525, 528 (Ky. 1987) ("Our rules of statutory construction are that . . . because statutes of limitation are in derogation of a presumptively valid claim, a longer period of limitations should prevail where two statutes are arguably applicable.").

In response to the above arguments, LG&E primarily argues that the UCC statute of limitations should apply because of the general policy that a state's adoption of the UCC standardizes commercial transactions. LG&E cites for support the official comment to UCC § 2-725, which explains that the purpose of the UCC's statute of limitations is

> [t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice.

Recourse to this well-known policy would ordinarily be persuasive, but we conclude that its application here is outweighed by the tenets of statutory construction relevant to Kentucky's particular legislative history.

**C.      Timing of the alleged breach**

CRI also presented an alternative argument that its claim against LG&E was still timely even if we were to conclude that the four-year rather than the five-year statute of limitations was applicable. It contends that LG&E breached the contract, at the earliest, in June of 1998, so that the April 17, 2002 amended complaint adding LG&E as a defendant falls within the four-year

limitations period. We have no reason to analyze this alternative theory, however, because, as discussed above, we have concluded that Kentucky's five-year statute of limitations should apply in the present case.

**D.    CRI's *quantum meruit* claim**

CRI also asserted a claim for *quantum meruit* in its amended complaint, alleging that because LG&E received and used coal from CRI but did not pay for it, LG&E was unjustly enriched. The district court dismissed this claim, reasoning that because an express contract for payment existed, and because an essential element of a *quantum meruit* claim is the absence of such an agreement, CRI could not maintain its *quantum meruit* claim. CRI brought a *quantum meruit* claim against Coal Equity as well, but the district court did not rule on that claim, noting that "CRI's claims against Coal Equity derive, in part, from an additional contract . . . the validity and enforceability of which" was not addressed in LG&E's motion to dismiss CRI's complaint.

*Quantum meruit* is an equitable doctrine that, in the absence of an express contract between the parties, "requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant." *United States v. Snider*, 779 F.2d 1151, 1159 (6th Cir. 1985). The issue in the present case is whether a contract existed between CRI and LG&E. CRI argues that if it is found not to be a third-party beneficiary of the coal supply contract between Coal Equity and LG&E, then CRI would have a valid *quantum meruit* claim against LG&E. According to CRI, the question of whether CRI is a third-party beneficiary remains unresolved, allegedly because LG&E has not conceded this point. CRI also notes that if the supply contract were held to be void or unenforceable, CRI would have a *quantum meruit* claim.

In response, LG&E has conceded that a valid contract between it and Coal Equity did exist and that CRI is a third-party beneficiary. LG&E states in its brief that "neither the validity of the LG&E Agreement nor CRI's general right to recover as a third-party beneficiary has been contested." In light of this concession, we believe that LG&E would be judicially estopped from later arguing that no contractual relationship existed. *Teledyne Indus. v. N.L.R.B.*, 911 F.2d 1214, 1217-18 (6th Cir.1990) ("The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. [It prevents] a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.") (quotations marks omitted).

The course of litigation, however, is never certain, and there is no guarantee that LG&E might not attempt on remand to repudiate the concession contained in its appellate brief. Moreover, the Federal Rules of Civil Procedure permit pleading in the alternative and even the pleading of inconsistent claims. Fed. R. Civ. P. 8(e)(2). In light of these considerations, we believe that the *quantum meruit* claim should remain as an alternative theory available to the plaintiff, at least until the contract claim is concluded.

To hold otherwise might prove to be premature and would fail to adequately protect the rights reserved by CRI. We note, however, that CRI's *quantum meruit* claim is only an alternative theory of recovery permitted by the Federal Rules of Civil Procedure. CRI, of course, may not recover twice for the same violation. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (It "goes without saying that courts can and should preclude double recovery.").

–9–

**E.     Coal Equity's claim for indemnity**

Coal Equity asserted a cross-claim against LG&E for indemnity in the event that Coal Equity is found liable to CRI.  The district court dismissed this claim, stating that because the LG&E contract did not contain an express indemnification provision in Coal Equity's favor, indemnity would not be applicable unless implied by law.  Relying on the Second Circuit's decision in *People's Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986), the district court determined that implied indemnity is available only in limited situations, and "is not available for redress of a garden variety breach of contract" such as the contract in the present case.

We agree with the result reached by the district court based upon the principles found in *Goodpasture*, but for different reasons than those put forth by the court.  In *Goodpasture*, the Republic of Yemen entered into a contract to purchase grain from Goodpasture.  Goodpasture was to deliver the grain to its grain elevator in the port of Houston, Texas, to be picked up by ships provided by Yemen.  Yemen chartered three ships from the Muhammadi Steamship Company to transport the grain.  Because less grain was loaded onto one of the ships by Goodpasture than the quantity originally agreed upon by Yemen and Muhammadi, Muhammadi suffered deadfreight charges. *Id.* at 350.  Deadfreight charges are freight charges "payable on cargo agreed by charterers to be shipped, but not actually shipped." *Id.* at 350.  Muhammadi demanded arbitration with Yemen. The ensuing arbitration resulted in an award in Muhammadi's favor.

Yemen then brought suit against Goodpasture in federal district court, seeking reimbursement for the charges it had paid to Muhammadi.  The district court construed Yemen's claims as claims for indemnity and granted recovery to Yemen. *Id.* at 349.  Goodpasture appealed.

The primary question addressed by the Second Circuit was whether Yemen's cause of action qualified as an indemnity claim. *Id.* at 350. Yemen's claim for indemnity from Goodpasture for the deadfreight charges was held not to be an indemnity claim, but rather "a claim for consequential damages from Goodpasture's alleged breach of the [] grain sale contracts." *Id.* at 351. Goodpasture's obligations, the court reasoned, "are measured not by Yemen's [contract] with Muhammadi, but by Yemen's contract with Goodpasture. *Id.* Similarly, in the present case, LG&E's obligations are not measured by Coal Equity's contract with CRI, but by Coal Equity's contract with LG&E. We therefore affirm the judgment of the district court dismissing Coal Equity's indemnity claim because Coal Equity can fully defend itself based upon its contract with LG&E.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the dismissal of Coal Equity's indemnity claim, **REVERSE** the rulings on the statute of limitations issue and the dismissal of CRI's *quantum meruit* claim, and **REMAND** the case for further proceedings consistent with this opinion.